**Michael V. PISANO, Individually and as Administrator of the Estate of Vincent F. Pisano, Deceased, Appellee**

v.

**EXTENDICARE HOMES, INC., Operating under the Fictitious Name Belair Health and Rehabilitation Center, Appellant.**

Superior Court of Pennsylvania.

Argued June 25, 2013.

Filed Aug. 12, 2013.

Thomas T. Frampton, Pittsburgh, for appellant.

Robert F. Daley, Pittsburgh, for appellee.

BEFORE: SHOGAN, LAZARUS and MUSMANNO, JJ.

OPINION BY SHOGAN, J.:

Appellant, Extendicare Homes, Inc., operating under the fictitious name Belair Health and Rehabilitation Center ("Belair"), appeals from the trial court's order denying its preliminary objection to the trial court's jurisdiction over the wrongful death suit by Appellee, Michael V. Pisano ("Appellee"), son and administrator of the estate of Vincent F. Pisano ("Decedent"), filed January 4, 2012. The objection, filed March 7, 2012, was based upon the existence of an Alternative Dispute Resolution Agreement ("the Agreement") between

Belair and Decedent. For the reasons that follow, we affirm.

The trial court summarized the facts and procedural history relevant to this appeal as follows:

> Extendicare Homes, Inc. conducting business under the fictitious name Belair Health and Rehabilitation Center, operates a long-term care nursing facility where the decedent Vincent F. Pisano resided at the time of his death. At the time of his admission to the Belair Health facility, on April 24, 2010, [Jamie Pisano],[1] the decedent's daughter with a Power of Attorney, executed an Alternative Dispute Resolution Agreement provided by [Belair], agreeing that any dispute covered by the Agreement would be resolved through binding arbitration pursuant to the terms of the Agreement. It is this Agreement that [Belair] seeks to invoke as a basis for dismissal upon a lack of jurisdiction in the trial court.
>
> The decedent died survived by Jamie Pisano, as well as Amanda Ann Pisano, a daughter, and his sons, Michael V. Pisano and James Joseph Pisano. Jamie Pisano has executed a Disclaimer and Renunciation on October 10, 2011, regarding all proceeds in any wrongful death recovery.[2]

Trial Court Opinion at 1–2.

Belair raises one issue before this Court on appeal:

> Did the Court commit an error of law by refusing to compel arbitration of [Appellee's] wrongful death action where, un-

---

1. The trial court refers to this daughter as both "Janice Pisano" and "Jamie Pisano." Trial Court Opinion at 1, 2. The record reveals that the daughter's signature on the Agreement reads "Janice Pisano," while the name printed below reads "Jamie Pisano." Preliminary Objection, 3/7/12, Exhibit A at 5. In his brief, Appellee refers to his sister as "Jamie Pisano." Appellee's Brief at 1. We adopt Appellee's reference.

2. Appellee's brief notes that Jamie, therefore, is not a party to this case. Appellee's Brief at 1; Plaintiff's Brief in Opposition to Defendant's Preliminary Objection, 3/26/12, at Exhibit A.

der Pennsylvania law, a wrongful death plaintiff's right of action is derivative of, and therefore limited by, the decedent's rights immediately preceding death?

Belair's Brief at 4.

The trial court noted that a wrongful death action is a creature of statute. It determined that the basis of a wrongful death action "lies in the tortious act which would support a survival action," but concluded that it is "independent of the decedent's estate's rights to an action against the tortfeasor." Trial Court Opinion, 7/9/12, at 2–3. The trial court explained that a wrongful death action is derivative in only a very limited way: "[T]he right to the wrongful death action ... does not depend upon the decedent's estate's rights to a survival action, but depends only upon the occurrence of the tortious act upon which it is based." *Id.* at 3. Thus, the trial court denied Belair's preliminary objection seeking to have Appellee's case dismissed for lack of subject matter jurisdiction.

 Generally, an order denying preliminary objections is interlocutory and not appealable as of right. *Elwyn v. DeLuca,* 48 A.3d 457 (Pa.Super.2012). "There exists, however, a narrow exception to this oft-stated rule for cases in which the appeal is taken from an order denying a petition to compel arbitration." *Id.* at 460 n. 4 (quoting *Shadduck v. Christopher J. Kaclik, Inc.,* 713 A.2d 635, 636 (Pa.Super.1998)) (citing 42 Pa.C.S.A. § 7320(a)(1); Pa.R.A.P. 311(a)(8)). "Our decisional law has made clear that the issue of whether a party agreed to arbitrate a dispute is a threshold, jurisdictional question that must be decided by the court." *Gaffer Insurance Company, Ltd. v. Discover Reinsurance Company,* 936 A.2d 1109, 1112 (Pa.Super.2007) (quoting *Smith v. Cumberland Group, Ltd.,* 455 Pa.Super. 276, 687 A.2d 1167, 1171 (1997)).

Pennsylvania courts have repeatedly distinguished wrongful death claims from survival claims as explained below, and this Court has addressed the application of an arbitration agreement between a nursing home and a decedent to a wrongful death claim. *Setlock v. Pinebrook Personal Care and Retirement Center,* 56 A.3d 904 (Pa.Super.2012). In *Setlock,* we affirmed the trial court's denial of a motion to compel arbitration of a survival claim and a wrongful death claim arising from the same tortious conduct. *Id.* at 912. The basis of this ruling was the narrow scope of the arbitration agreement. We did not address the distinction between survival and wrongful death claims because it was unnecessary therein, where the agreement covered only contract claims. *Id.*

In the present case, however, the scope of the Agreement is broad, encompassing both contract and tort claims. Thus, the distinction between survival and wrongful death claims and its effect on arbitration agreements is before us. The issue in this case is one of first impression in Pennsylvania.

### Validity and Scope of the Agreement

 Our standard of review is as follows:

Our review of a claim that the trial court improperly denied the appellant's preliminary objections in the nature of a petition to compel arbitration is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition.

*Walton v. Johnson,* 66 A.3d 782, 787 (Pa.Super.2013) (quoting *Gaffer,* 936 A.2d at 1112). "In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration." *Elwyn,* 48 A.3d at 461 (quoting *Smay v.*

*E.R. Stuebner, Inc.*, 864 A.2d 1266, 1270 (Pa.Super.2004)). First, we examine whether a valid agreement to·arbitrate exists. Second, we must determine whether the dispute is within the scope of the agreement.

Belair asserts that the Agreement is valid and binding, and the survival claim is subject to it. Belair's Brief at 8. Appellee does not dispute this and instead, acknowledges that Decedent "entered into an Arbitration Agreement purporting to waive his Constitutional right to a jury trial and agreeing to submit any claims arising from his residency in Belair's nursing home to binding arbitration." Appellee's Brief at 3. Therefore, we need not examine further evidence to assess whether a valid agreement to arbitrate exists. Instead, we must focus on the Agreement's scope.

██ "Whether a claim is within the scope of an arbitration provision is a matter of contract, and as with all questions of law, our review of the trial court's conclusion is plenary." *Elwyn*, 48 A.3d at 461. The Agreement's language is clear that "any and all disputes arising out of or in any way relating to this Agreement or to the Resident's stay at the center [including] ... death or wrongful death" are subject to arbitration. Preliminary Objection, 3/7/12, Exhibit A at 2. Therefore, we must

determine if the Agreement is binding on Appellee such that his wrongful death claim is·subject to arbitration. To that end, we first examine whether wrongful death claims are derivative of decedents' rights under Pennsylvania law.

### Nature of Wrongful Death Claims

Belair argues[3] that the Pennsylvania Wrongful Death Act, 42 Pa.C.S.A. § 8301 (1978) ("Act"), creates a cause of action that is "solely derivative of the underlying tort." Belair's Brief at 10. Although the Act created a new cause of action separate from a survival claim for certain enumerated claimants, Belair insists that a wrongful death claim in Pennsylvania "is wholly derivative of, and therefore defined by, the decedent's rights immediately preceding death." Belair's Brief at 10.

Appellee disputes Belair's interpretation of Pennsylvania law, stating, "A ˙wrongful death action and a survival action are not actions derivative of each other, but rather are, at best, actions flowing from the same underlying tortious conduct. The law in Pennsylvania on this point is crystal clear...." Appellee's Brief at 4. Appellee maintains that the rights of Decedent, therefore, cannot limit his rights in his wrongful death action; thus, the action must be adjudicated.[4] *Id.* at 7.

3. In support of Belair's position, the Pennsylvania Defense Institute ("PDI") submitted an *amicus curiae* brief asserting, among other things, that the trial court's ruling opposes Pennsylvania's public policy favoring arbitration. PDI's *Amicus* Brief at 2, 4–6. PDI "is a state-wide association of defense counsel and insurance company executives.... The goals of PDI include the prompt, fair and just disposition of claims, the preservation of the administration of justice, the elimination of court congestion and delays in civil litigation, and other related public activities." *Id.* at 1. It submitted an *amicus curiae* brief because the results of this appeal will "clearly and substantially impact PDI's members." *Id.* "Left standing, the decision will substantially

increase costs associated with resolving claims against health care providers, including nursing homes, as well as against all other parties, will multiply proceedings, and burden the courts of the Commonwealth." *Id.* at 2.

4. In support of Appellee's position, the Pennsylvania Association for Justice ("PAJ") submitted an *amicus curiae* brief further outlining Pennsylvania case law distinguishing wrongful death claims from survival claims. PAJ *Amicus* Brief at 7–10. PAJ is a non-profit organization of 2,600 Pennsylvania attorneys that promotes "the rights of individual citizens by advocating unfettered right to trial by jury, full and just compensation for innocent

In support of its contention that a wrongful death claim is derivative of and defined by a decedent's rights, Belair relies on several cases; the most prominent is our Supreme Court's ruling in *Hill v, Pennsylvania Railroad Company*, 178 Pa. 223, 35 A. 997 (1896). Belair's Brief at 10. The issue in *Hill* was whether, under the Act of April 15, 1851, P.L. 669, as amended by the Act of April 26, 1855, P.L. 309, the wife of the decedent had "an independent right of action for the death of the husband, which the husband could not release." *Hill*, 35 A. at 997–998.

The Act of 1851 provided as follows:

SECTION 18. That no action hereafter brought to recover damages for injuries to the person by negligence or default, shall abate by reason of the death of the plaintiff; but the personal representatives of the deceased may be substituted as plaintiff, and prosecute the suit to final judgment and satisfaction.

SECTION 19. That whenever death shall be occasioned by unlawful violence or negligence, and no suit for damages be brought by the party injured during his or her life, the widow of any such deceased, or if there be no widow the personal representatives, may maintain an action for and recover damages for the death thus occasioned.

Act of April 15, 1851, P.L. 669.

The *Hill* Court noted that the legislature enacted two sections to allow recovery in the following alternative scenarios:

[T]he one where an action was brought by the injured party during his life, but the plaintiff died pending the action; and the other where no action had been brought at the time of the death of the

party injured.... Hence it cannot be argued that the intention of the eighteenth section was to give one right of action to the party injured, and another and independent right of action for the same injury to his widow. The cause of action is the same in both sections....

*Hill*, 35 A. at 998. The *Hill* Court further stated that the Act of 1855, which expanded section 19 to allow recovery by decedent's children or parents, did not affect its analysis. *Id.* at 999. As two separate actions did not exist, "[t]he right of action was in its origin the sole property of the husband, and, of course, subject to his control." *Id.*

Belair, therefore, is correct that under the Acts of 1851 and 1855, wrongful death actions **were** derivative actions controlled by the rights of the decedents from which the actions derived. The legislature, however, has amended and reenacted the Act. *See* 42 Pa.C.S.A. § 8301. Unlike its nineteenth century predecessors, Pennsylvania's wrongful death statute, as of 1911, distinguished a wrongful death action from a survival action, currently providing that "the right of action created by this section shall exist only for the benefit of the spouse, children or parents of the deceased." 42 Pa.C.S.A. § 8301 (1978); *Kaczorowski v. Kalkosinski*, 321 Pa. 438, 184 A. 663, 665 (1936) (distinguishing the actions based on the 1911 version of Pennsylvania's wrongful death statute, Act of June 7, 1911, P.L. 678). Pennsylvania courts have consistently interpreted this language to mean that two separate and distinct causes of action arise from a single injury, one dependent "on the rights of action which the decedent possessed at the time

---

victims, and the maintenance of a free and independent judiciary." *Id.* at iii. It submitted an *amicus curiae* brief because this appeal impacts "the fundamental issue of the right to a trial by jury." *Id. Amicus* posits that the

difference in potential damages between the two claims further proves that a wrongful death claim is not derivative of a survival claim. *Id.* at 10–11.

of her death," and the other dependent on "the rights of action that the [claimants], as named by statute, possess." *Holmes v. Lado,* 412 Pa.Super. 218, 602 A.2d 1389, 1391 n. 2 (1992); *see also Kaczorowski,* 184 A. at 665 ("By the statute there is given an explicit and independent right of action to recover the damages peculiarly suffered by the parties named therein."); *Matharu v. Muir,* 29 A.3d 375, 383 (Pa.Super.2011) ("[A] cause of action for wrongful death is not the deceased's cause of action.").

The unclear American Bar Association Comment to Pennsylvania's wrongful death statute may explain Belair's misplaced reliance on *Hill. See* 42 Pa.C.S.A. § 8301, Bar Association Comment. It states that the current statute is "[s]ubstantially a reenactment of act of April 15, 1851 (P.L. 669), § 19 (12 P.S. § 1601), [and] act of April 26, 1855 (P.L. 309), § 1 (12 P.S. § 1602)." The Comment fails to note, however, that although 42 Pa.C.S.A. § 8301 is a reenactment of Pennsylvania's wrongful death statute, the altered language has modified its application. A wrongful death action no longer is derivative of the decedent's claim, and unlike in *Hill,* the right of action belongs to the statutory claimants rather than the decedent.

Belair also cites a number of cases that address other aspects of wrongful death claims, thereby attempting to support its contention that wrongful death claims are derivative of and defined by the decedents' rights. In its words:

> Pennsylvania courts have consistently interpreted the derivative nature of the Wrongful Death Act to bar a wrongful death claim by a beneficiary if the decedent could not have brought the underlying suit based upon the same injury. The courts have applied this rule in a variety of contexts analogous to the case at bar including: statutes of limitations,

venue determinations, and waiver of the right to bring suit.

Belair's Brief at 12. As discussed below, Belair's reliance on these cases is misplaced.

First, regarding statutes of limitations, Belair relies on this Court's ruling in *Matharu,* a case in which we resolved, *inter alia,* the applicable statutes of limitations to survival and wrongful death claims. *Matharu,* 29 A.3d at 383. We held that a wrongful death claim is not time-barred if the underlying negligence claim is not yet time-barred. *Id.* at 384. Belair contends that this holding demonstrates the derivative nature of wrongful death suits. Belair's Brief at 12. *Matharu,* however, supports the opposite contention. The case makes clear that survival actions have separate statutes of limitations from wrongful death actions, and these separate statutes of limitations further distinguish the two claims. *Matharu,* 29 A.3d at 383–384. While the statute of limitations for a survival action runs from the date of the tort, the statute of limitations for a wrongful death action runs from the date of death. *Id.* at 383; *see also Moyer v, Rubright,* 438 Pa.Super. 154, 651 A.2d 1139, 1143 (1994). Provided the underlying negligence action is not time-barred at the time of death, the statute of limitations applicable to the survival action does not affect the wrongful death claim. *Moyer,* 651 A.2d at 1142–1143. Although both actions are derived from the same tortious conduct, the injury caused to the claimant bringing a wrongful death action is the decedent's death, and such injury does not occur until the date of death. *Id.* at 1143.

Second, regarding venue determinations, Belair cites *Sunderland v. R.A. Barlow Homebuilders,* 791 A.2d 384 (Pa.Super.2002), in support of its position. In *Sunderland,* this Court held that the proper venue for wrongful death and survival

disputes was the county in which the accident occurred rather than the county in which the decedent died. *Id.* at 392. In so concluding, part of our analysis centered on the nature of a wrongful death action, which we noted is "derivative of the injury which would have supported the decedent's own cause of action and is dependent upon the decedent's cause of action being viable at the time of death." *Id.* at 390–391 (citing *Moyer,* 651 A.2d at 1143). We therefore concluded that venue was proper in the county in which the tortious act occurred. *Sunderland,* at 392. We also based our conclusion on the fact that the survival action had no connection to the alternative venue location and that death did not qualify as a "transaction or occurrence" under Pa.R.C.P. 1006. *Id.* at 391–392. This holding does not necessarily support Belair's contention that a wrongful death action is derivative of and defined by the decedent's rights.

Third, regarding waiver of the right to bring suit, Belair relies on this Court's ruling in *DiSerafino v. Bucyrus–Erie Corporation,* 323 Pa.Super. 247, 470 A.2d 574 (1983). In *DiSerafino,* we held that Pennsylvania's Workmen's Compensation Act [5] limited the remedies of the employee and his beneficiaries. *Id.* at 578–580. Belair cites this case in an attempt to demonstrate that decedents' agreements can bind wrongful death claimants. Belair's Brief at 12–13. *DiSerafino,* however, stands only for the proposition that the Pennsylvania legislature, through the Workers' Compensation Act or otherwise, may statutorily limit recoveries in wrongful death suits. It does not demonstrate that such suits are derivative of the rights of the decedent as Belair suggests.

Additionally, Belair cites *Grbac v. Reading Fair Co.,* 688 F.2d 215 (3d Cir.1982), non-binding authority, in support of its position. In *Grbac,* the court of appeals held that a liability release executed by decedent was binding on the widow's wrongful death claim. *Id.* at 217–218. Erroneously following the Pennsylvania Supreme Court's holding in *Hill,* the court of appeals misinterpreted Pennsylvania law in holding that a "wrongful death action is purely derivative" in Pennsylvania. *Id.* at 217. The *Grbac* Court cites no further cases in support of its holding, and no binding Pennsylvania authority exists with a similar holding. In fact, the limited authority on this subject indicates the opposite conclusion of *Grbac.* *See Pennsylvania Railroad Co. v. Henderson,* 51 Pa. 315, 317 (1866) ("This suit is brought by the widow, and her right of action cannot be affected by any discharge or release of [husband] in his lifetime."); *Buttermore v. Aliquippa Hospital,* 522 Pa. 325, 561 A.2d 733, 735–736 (1989) (holding that husband's release of liability did not bar wife's loss of consortium claim, an "independent cause of action"). Although Belair attempts to use *Grbac* to demonstrate that a decedent's contractual agreements are binding on a wrongful death claimant under Pennsylvania law, such is not the case.

 The current distinction between these two claims, as explained by this Court previously, is as follows:

> The survival action has its genesis in the decedent's injury, not his death. The recovery of damages stems from the rights of action possessed by the decedent at the time of death.... In contrast, wrongful death is not the deceased's cause of action. An action for wrongful death may be brought only by

---

**5.** This act has been amended and is now named and cited as the "Workers' Compensa-tion Act." 77 P.S. § 1.

specified relatives of the decedent to recover damages in their own behalf, and not as beneficiaries of the estate.... This action is designed only to deal with the economic effect of the decedent's death upon the specified family members.

*Moyer*, 651 A.2d at 1141 (quoting *Frey v. Pennsylvania Electric Company*, 414 Pa.Super. 535, 607 A.2d 796, 798 (1992)).

### Defining "Derivative"

Pennsylvania courts' dual use of the term "derivative action" in other areas of the law also likely has contributed to Belair's confusion. For example, a derivative action in corporate and insurance law refers to the **rights** from which the claimant derives a cause of action. In corporate law, "where a corporation suffers loss because of the acts of officers, directors, or others[,] ... the stockholder does not have a direct cause of action for such damages, but has a derivative cause of action on behalf of the corporation to recover the loss for the benefit of the corporation." *Weston v. Northampton Personal Care, Inc.*, 62 A.3d 947, 1009 (Pa.Super.2013) (internal quotations omitted); *see* Pa. R.C.P. 1506 (stockholder's derivative action defined). The shareholder's cause of action, therefore, is derived from the corporation's right to bring suit.

In insurance law, "subrogation is a contingent and derivative right, and a subrogee stands in the shoes of the subrogor and 'can only recover damages when his subrogor has a legally cognizable cause of action against a third party.'" *Universal Underwriters Insurance Co. v. A. Richard Kacin, Inc.*, 916 A.2d 686, 693 (Pa.Super.2007). Again, the subrogee's cause of action is derived from the subrogor's right to bring suit. In both areas of the law, the party bringing suit is limited to the rights of the party from whom the action derives.

*See id.* at 694 (internal quotations omitted) ("[S]ubrogation is derivative in nature, placing the subrogee in the precise position of the one to whose rights and disabilities he is subrogated."); Pa.R.C.P. 1506(a) (shareholder's action is to enforce corporation's rights).

A derivative action in tort law, however, refers to the **injury** from which the claimant derives a cause of action. Courts often identify loss of consortium claims as derivative actions. "It is well-settled that the claim is derivative, emerging from the impact of one spouse's physical injuries upon the other spouse's marital privileges and amenities. It is equally established that a loss of consortium claim remains a separate and distinct cause of action." *Darr Construction Co. v. Workmen's Compensation Appeal Board (Walker)*, 552 Pa.400, 715 A.2d 1075, 1079–1080 (1998); *see also Urmann v. Rockwood Casualty Insurance Co.*, 905 A.2d 513, 522 (Pa.Super.2006) (same). Unlike derivative actions in corporate or insurance law, the injured spouse's rights in a consortium claim do not constrain the claimant spouse's rights. *See, e.g., Darr*, 715 A.2d at 1079–1081 (reversing Commonwealth Court's application of employer's right of subrogation, which arose from injured husbands' employment, on wives' rights of recovery).

The courts' dual use of "derivative action" aligns with the definitions in Black's Law Dictionary.

1. A suit by a beneficiary of a fiduciary to enforce a right belonging to the fiduciary; [especially,] a suit asserted by a shareholder on the corporation's behalf against a third party....

2. A lawsuit arising from an injury to another person, such as a husband's action for loss of consortium arising from an injury to his wife caused by a third person.

BLACK'S LAW DICTIONARY at 455 (7th ed. 1999). It is the first use of this term that Belair urges this Court to apply to wrongful death actions. Belair's Brief at 11 ("the Courts in Pennsylvania have continually treated a wrongful death action as derivative of and dependent upon the rights of the decedent"). It is the second use of this term, however, that the courts have used in discussing wrongful death actions. *See, e.g., Moyer*, 651 A.2d at 1143 n. 3 (stating that both wrongful death and survival actions are derivative of the original tort but are distinct from each other).

■ We conclude that wrongful death actions are derivative of decedents' injuries but are not derivative of decedents' rights. This conclusion aligns with the proper use of the term "derivative action" and is consistent with the Supreme Court's pronouncement in *Kaczorowski*, which explained:

> We have announced the principle that the statutory action is derivative because it has as its basis the same tortious act which would have supported the injured party's own cause of action. Its derivation, however, is from the tortious act, and not from the person of the deceased, so that it comes to the parties named in the statute free from personal disabilities arising from the relationship of the injured party and tort-feasor.

*Kaczorowski*, 184 A. at 664.

### Application of Arbitration Agreements to Third Parties

■ Having settled that Appellee's wrongful death claim is not derivative of and defined by Decedent's rights, we must resolve whether Appellee remains bound under the Agreement. Belair's initial argument hinged on this Court adopting the reasoning of *Hill* to determine that Appel-

lee's wrongful death claim is derivative of Decedent's rights. Although Belair reaffirmed its reliance on *Hill* in its reply brief, it acknowledged that wrongful death claims derive from the decedent's injury. Belair's Reply Brief at 1, 3–4. Nevertheless, Belair maintains that Appellee's rights "are dependent upon the rights of the decedent immediately preceding his death." *Id.* at 1. It emphasizes that a decedent's survival action must be viable at the time of death for a claimant to bring a wrongful death action, and, therefore, the decedent's right of action controls the viability of the wrongful death action. *Id.* at 1–3. Appellee maintains that if the wrongful death action is not derivative, the Agreement can be binding only on the parties who signed it. Appellee's Brief at 3, 9–10. Any other result would violate contract law principles and infringe on the claimants' constitutional right to a jury trial. *Id.*

■ We begin by noting that Pennsylvania has a well-established public policy that favors arbitration, and this policy aligns with the federal approach expressed in the Federal Arbitration Act ("FAA"). *Gaffer*, 936 A.2d at 1113; 9 U.S.C.A. Ch. 1 §§ 1–16 (West 1990).[6] "[T]he fundamental purpose of the Federal Arbitration Act is to relieve the parties from expensive litigation and 'to help ease the current congestion of court calendars.'" *Joseph Muller Corporation Zurich v. Commonwealth Petrochemicals, Inc.*, 334 F.Supp. 1013, 1019 (S.D.N.Y.1971) (quoting *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 410 (2d Cir.1959)). Its passage was "'a congressional declaration of a liberal federal policy favoring arbitration agreements.'" *Gaffer*, 936 A.2d at 1113 (quoting *Moses H. Cone Memorial Hospital v. Mer-*

---

6. The FAA encompasses all of Title 9, but chapters 2 and 3, which address foreign and international arbitration, are not relevant to this appeal.

*cury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).

This policy, however, was not intended to render arbitration agreements more enforceable than other contracts, and the FAA "had not been designed to preempt all state law related to arbitration." *Gaffer,* 936 A.2d at 1113–1114 (citing *E.E.O.C. v. Waffle House, Inc.,* 534 U.S. 279, 293–294, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002); *Thibodeau v. Comcast Corp.,* 912 A.2d 874, 879–880 (Pa.Super.2006)). "Rather, when addressing the specific issue of whether there is a valid agreement to arbitrate, courts generally should apply ordinary state-law principles that govern the formation of contracts, but in doing so, must give due regard to the federal policy favoring arbitration." *Gaffer,* 936 A.2d at 1114 (internal quotation omitted).[7]

With this shared state and federal policy in mind, we proceed with the application of Pennsylvania law. This Court has previously summarized the law as follows:

> Arbitration is a matter of contract, and parties to a contract cannot be compelled to arbitrate a given issue absent an agreement between them to arbitrate that issue. Even though it is now the policy of the law to favor settlement of disputes by arbitration and to promote the swift and orderly disposition of claims, arbitration agreements are to be strictly construed and such agreements should not be extended by implication. In general, only parties to an arbitration agreement are subject to arbitration. However, a nonparty, such as a third-party beneficiary, may fall within the scope of an arbitration agreement if that is the parties' intent.

*Elwyn,* 48 A.3d at 461 (internal citations and quotation omitted); *see also Schoellhammer's Hatboro Manor, Inc. v. Local Joint Executive Board of Philadelphia,* 426 Pa. 53, 231 A.2d 160, 164 (1967) (declining to compel non-signatory of agreement to submit to arbitration because "arbitration, a matter of contract, should not be compelled of a party unless such party, by contract, has agreed to such arbitration").

■ In the case *sub judice,* Appellee does not have an agreement with Belair to arbitrate. Belair's agreement is between it and Decedent alone. Regardless of Belair's intent, Pennsylvania's wrongful death statute, as discussed above, does not characterize Appellee and other wrongful death claimants as third-party beneficiaries. It is, therefore, clear under relevant contract law that the trial court herein properly refused to compel arbitration. As this Court stated previously, "[T]he existence of an arbitration provision and a liberal policy favoring arbitration does not require the rubber stamping of all disputes as subject to arbitration." *McNulty v. H & R Block, Inc.,* 843 A.2d 1267, 1271 (Pa.Super.2004). This is especially true where, as here, holding otherwise would operate against principles of Pennsylvania contract law and the FAA. *Gaffer,* 936 A.2d at 1113 (quoting *E.E.O.C.,* 534 U.S. at 293, 122 S.Ct. 754) ("Notwithstanding this favorable federal policy towards arbitration agreements, the Federal Arbitration Act does not require parties to arbitrate when they have not agreed to do so.'").

■ Furthermore, as Appellee noted, compelling arbitration upon individuals who did not waive their right to a jury trial would infringe upon wrongful death claim-

---

7. The FAA, however, does preempt state law that categorically prohibits arbitration of particular types of claims, which "is contrary to the terms and coverage of the FAA." *Marmet*

*Health Care Center, Inc. v. Brown,* —— U.S. ——, 132 S.Ct. 1201, 1203–1204, 182 L.Ed.2d 42 (2012). Such a prohibition is not at issue here.

ants' constitutional rights. This right, as preserved in the Seventh Amendment of the United States Constitution, "is enshrined in the Pennsylvania Constitution," and "the constitutional right to a jury trial, as set forth in PA. CONST. art. 1, § 6, does not differentiate between civil cases and criminal cases." *Bruckshaw v. Frankford Hospital of City of Philadelphia*, 58 A.3d 102, 108–109 (Pa.2012). Denying wrongful death claimants this right where they did not waive it of their own accord would amount to this Court placing contract law above that of both the United States and Pennsylvania Constitutions. *Commonwealth v. Gamble*, 62 Pa. 343, 349 (1869) ("But that the legislature must act in subordination to the Constitution needs no argument to prove. . . .").

### Extra-jurisdictional Authority

Our decision today aligns with the analysis of other jurisdictions with similar wrongful death statutes. While not controlling authority, we reference those cases here in support of our conclusion.

> A review of the cases decided based on statutory language indicates that courts in states where wrongful death actions are recognized as independent and separate causes of action are more likely to hold that the [claimants] are not bound by a decedent's agreement to arbitrate while [claimants] in states where wrongful death actions are wholly derivative in nature are generally held to be bound by a decedent's arbitration agreement.

*In re Labatt Food Service, L.P.*, 279 S.W.3d 640, 647 (Tex.2009) (internal citations omitted). Although exceptions exist, *see, e.g., Laizure v. Avante at Leesburg, Inc.*, 109 So.3d 752, 754 (Fla.2013) (holding that wrongful death actions, despite such actions being independent under Florida statute, are "derivative for purposes of the issue presented in this case," thereby allowing wrongful death claimants to be bound by decedents' arbitration agreements), the trend is consistent. *Compare Woodall v. Avalon Care Center–Federal Way, LLC*, 155 Wash.App. 919, 231 P.3d 1252, 1257–1258 (2010) (declining to compel arbitration because the actions are distinct and not derivative under Washington law), *with Cleveland v. Mann*, 942 So.2d 108, 118–119 (Miss.2006) (compelling arbitration because the actions are the same action, distinguished only by the party bringing the action, under Mississippi law).

In *Bybee v. Abdulla*, 189 P.3d 40 (Utah 2008), the Utah Supreme Court dealt with this same issue. It held that "a decedent does not have the power to contract away the wrongful death action of his heirs." *Id.* at 50. In Utah, "a wrongful death cause of action, while derivative in the sense that it will not lie without a viable underlying personal injury claim, is a separate claim." *Id.* at 47. The court further noted that because the wrongful death claimant was not an intended beneficiary of the contract, she could not be considered a third-party beneficiary such that an arbitration agreement would bind her. *Id.* at 49–50.

Similarly, in *Carter v. SSC Odin Operating Co., LLC*, 364 Ill.Dec. 66, 976 N.E.2d 344 (Ill.2012), the Illinois Supreme Court held that an arbitration agreement signed by a decedent did not bind a wrongful death claimant. Emphasizing the independent nature of the claim, the court stated, "[N]either the Wrongful Death Act nor this court's case law suggests that this limitation on the cause of action provides a basis for dispensing with basic principles of contract law in deciding who is bound by an arbitration agreement." *Id.* at 359.

In *Lawrence v. Beverly Manor*, 273 S.W.3d 525, 529 (Mo.2009), where the decedent's daughter signed an arbitration agreement on her mother's behalf in daughter's capacity as her mother's agent under a power of attorney, the Missouri

Supreme Court found that the Missouri wrongful death statute created an independent and separate cause of action. "A claim for wrongful death is not derivative from any claims [decedent] might have had, and the damages are not awarded to the wrongful death plaintiffs on [decedent's] behalf. The arbitration agreement, therefore, cannot bind parties to the wrongful death suit." *Id.*

Finally, the Ohio Supreme Court also determined that a decedent "could not restrict his beneficiaries to arbitration of their wrongful-death claims, because he held no right to those claims." *Peters v. Columbus Steel Castings Co.*, 115 Ohio St.3d 134, 873 N.E.2d 1258, 1262 (2007). This holding was based, first, on the principle that "only signatories to an arbitration agreement are bound by its terms" and, second, on the fact that under Ohio's wrongful death statute, "a survival action brought to recover for a decedent's own injuries before his or her death is independent from a wrongful death action seeking damages for the injuries that the decedent's beneficiaries suffer as a result of the death." *Id.* at 1260.

### Conclusion

In sum, we hold that Pennsylvania's wrongful death statute creates an independent action distinct from a survival claim that, although derived from the same tortious conduct, is not derivative of the rights of the decedent. We conclude, therefore, that the trial court did not abuse its discretion in determining that Decedent's contractual agreement with Belair to arbitrate all claims was not binding on the non-signatory wrongful death claimants.

Order affirmed.