J-A14031-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JAMES GOLLICK AS ADMINISTRATOR OF THE ESTATE OF ANNA MAY GOLLICK | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SYCAMORE CREEK HEALTHCARE GROUP, INC. D/B/A CARING HEIGHTS COMMUNITY CARE AND REHABILITATION CENTER, SABER HEALTHCARE GROUP, LLC AND ROSEWOOD OF THE OHIO VALLEY, LLC | : | No. 1068 WDA 2020 |
| | : | |
| APPEAL OF: SYCAMORE CREEK HEALTHCARE GROUP, INC. D/B/A CARING HEIGHTS COMMUNITY CARE AND REHABILITATION CENTER AND SABER HEALTHCARE GROUP, LLC | : | |

Appeal from the Order Entered September 8, 2020
In the Court of Common Pleas of Allegheny County
Civil Division at No: GD-20-006372

BEFORE: NICHOLS, J., MURRAY, J., and KING, J.

MEMORANDUM BY MURRAY, J.:                    **FILED: JULY 29, 2021**

Sycamore Creek Healthcare Group, Inc., d/b/a Caring Heights Community Care and Rehabilitation Center, and Saber Healthcare Group, LLC (collectively, Appellants), appeal from the order denying Appellants' preliminary objections (POs) requesting transfer of the survival claim of Appellee, James Gollick (Gollick), to binding arbitration pursuant to an arbitration agreement between Appellants and Gollick's late mother, Anna May

Gollick (Decedent). Upon careful review of precedent and the record, we reverse and remand for referral to arbitration.

This appeal arises from Gollick's wrongful death and survival action,[1] asserting that Appellants and Rosewood of the Ohio Valley, LLC (Rosewood)[2] were negligent in their care of Decedent, who was a patient at their respective nursing home facilities in October and November 2018. In sum, Gollick claims the negligence of Appellants and Rosewood resulted in Decedent suffering a urinary tract infection, sepsis, and eventual death on November 27, 2018.

Pertinently, upon Decedent's admission to Appellants' facility, her husband and power-of-attorney (POA), Frank Gollick (Frank), signed the arbitration agreement (Arbitration Agreement) on Decedent's behalf, which required that any disputes be resolved in arbitration. **See generally** Arbitration Agreement, 11/2/18 (attached to Appellants' July 8, 2020 POs as Exhibit C).

---

[1] "Pennsylvania's Wrongful Death Act, 42 Pa.C.S.A. § 8301, allows a spouse, children or parents of a deceased to sue another for a wrongful or neglectful act that led to the death of the deceased." **Dubose v. Quinlan**, 125 A.3d 1231, 1238 (Pa. Super. 2015) (statutory citation modified; citation omitted). Survival actions, under 42 Pa.C.S.A. § 8302, "permit a personal representative to enforce a cause of action which has already accrued to the deceased before his death." **Pastierik v. Duquesne Light Co.**, 526 A.2d 323, 326 (Pa. 1987) (emphasis and citation omitted).

[2] Rosewood advised this Court by correspondence dated February 10, 2021 that it "will not be taking any position with respect to the appeal" and "will not be participating in this matter."

On June 3, 2020, Gollick, individually and as administrator of Decedent's estate, filed a complaint alleging professional negligence, corporate negligence, survivorship and wrongful death.

Appellants filed POs on July 8, 2020, arguing the Arbitration Agreement required Gollick's survival claim to be resolved through arbitration. POs, 7/8/20, at ¶¶ 7, 11, 17. It is undisputed that Gollick's wrongful death claim is not subject to arbitration. *See id.* at ¶ 20 (asserting Gollick's remaining claims must be stayed pending resolution of the survival claim). Appellants claimed Frank was authorized in his role as Decedent's POA agent to execute the Arbitration Agreement on Decedent's behalf.[3] *Id.* at ¶¶ 5-6, 9.

Gollick filed an answer in opposition to the POs disputing arbitration of the survival claim. Answer, 9/1/20, at ¶ 7.

On September 8, 2020, the trial court entered an order denying Appellants' POs.[4] Appellants timely appealed. Both the trial court and Appellants have complied with Pa.R.A.P. 1925.

On appeal, Appellants present a single question:

---

[3] Appellants attached to their POs a copy of the durable POA agreement (POA Agreement) dated November 11, 2016. The POA Agreement granted Frank numerous powers, including, *inter alia*, the power to "commence, prosecute, defend or settle claims and litigation" on behalf of Decedent. POA Agreement, 11/11/16, at ¶ 8 (attached to Appellants' POs as Exhibit B).

[4] The trial court utilized a proposed order submitted by Appellants which detailed the relief sought in their POs. The court crossed out Appellants' proposed language and handwrote "Denied."

- 3 -

Whether the Trial Court erred in refusing to enforce a valid Arbitration Agreement between Defendants/Appellants and [Decedent] on grounds that the survival claim cannot be bifurcated from the wrongful death claim?

Appellants' Brief at 2.

Preliminarily, we recognize:

This Court reviews an order sustaining or overruling preliminary objections for an error of law, and in so doing, must apply the same standard as the trial court.

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Sayers v. Heritage Valley Med. Grp., Inc.*, 247 A.3d 1155, 1160-61 (Pa.

Super. 2021) (citations omitted).

Gollick maintains the trial court's ruling is correct. He argues:

Nothing in the record of this matter indicates [Decedent] had any intent to enter into an arbitration agreement with []Appellants. She did not review and sign the [Arbitration A]greement and she did not grant [Frank] or anyone else the authority to waive her right to pursue valid legal claims through a court of law.

Gollick's Brief at 9-10 (citing *Petersen v. Kindred Healthcare, Inc.*, 155

A.3d 641, 645 (Pa. Super. 2017) (for arbitration agreement between nursing

home and patient's POA agent to be valid, there must be an agency

- 4 -

relationship between patient/principal and the purported POA agent)).[5] Gollick claims that although the POA Agreement "grants [Frank] the ability to pursue litigation on [Decedent's] behalf, nothing in the Power of Attorney grants [Frank] the authority to waive [Decedent's] right to access the court system and have the matter decided by a jury in favor of arbitration." Brief in Opposition to POs, 9/1/20, at 4 (unnumbered). Gollick emphasizes that next to Frank's signature on the form Arbitration Agreement, a typewritten "x" was entered in a box indicating that Frank was Decedent's "Husband." Gollick's Brief at 4; *see also* Arbitration Agreement, 11/2/18, at p. 4 (unnumbered). We are not persuaded by Gollick's argument.

With regard to agency, this Court has explained:

> A party can be compelled to arbitrate under an agreement, even if he or she did not sign that agreement, if common-law principles of agency and contract support such an obligation on his or her part. … An agency relationship may be created by any of the following: (1) **express authority**, (2) implied authority, (3) apparent authority, and/or (4) authority by estoppel. Agency cannot be inferred from mere relationships or family ties, and we do not assume agency merely because one person acts on behalf of another. Rather, we look to facts to determine whether the principal expressly or impliedly intended to create an agency relationship. … Finally, the party asserting the agency relationship bears the burden of proving it by a preponderance of the evidence.
>
> Express authority exists where the principal deliberately and specifically grants authority to the agent as to certain matters. …

---

[5] Gollick raised this claim before the trial court. **See** Brief in Opposition to POs, 9/1/20, at 3-4 (unnumbered); **see also Bollard & Assocs. v. H&R Indus.**, 161 A.3d 254, 256 (Pa. Super. 2017) (noting claims must first be raised before the trial court to be preserved on appeal).

**A valid, durable power of attorney constitutes a grant of express authority per its terms**. *See* 20 Pa.C.S.A. § 5601(a).

*Wisler v. Manor Care of Lancaster PA, LLC*, 124 A.3d 317, 323-24 (Pa. Super. 2015) (emphasis added; quotation marks, brackets and some citations omitted).

Here, the POA Agreement gave Frank the authority to "commence, prosecute, defend or settle claims and litigation" on behalf of Decedent. POA Agreement, 11/11/16, at ¶ 8. Pursuant to statute, a POA agent's power to pursue claims and litigation includes the power to arbitrate. *See* 20 Pa.C.S.A. § 5603(s)(1) ("A power to 'pursue claims and litigation' shall mean that the agent may . . . [i]nstitute, prosecute, defend, abandon, **arbitrate**, compromise, settle or otherwise dispose of . . . any legal proceedings . . . regarding any claim relating to the principal[.]" (emphasis added)).

Further, there is nothing in the record to indicate the POA Agreement was invalid.[6] Frank thus had express authority to act on Decedent's behalf under the POA Agreement, including the authority to agree to arbitrate legal claims. *See Wisler*, *supra*. Contrary to Gollick's argument, our determination in this regard is not altered by the "x" notation in the Arbitration Agreement indicating Frank was Decedent's "Husband." Indeed, the trial court found that Frank signed the Arbitration Agreement "**as Power of Attorney**

---

[6] Gollick never alleged that Decedent was suffering from dementia, mental infirmity, or disorientation when the POA Agreement was executed.

for the [D]ecedent," Trial Court Opinion, 11/23/20, at 7 (emphasis added), and Appellants presented the POA Agreement to the trial court as proof of the agency relationship, consistent with **Wisler**.

Finally, the law upon which Gollick relies is distinguishable. **See id.**, 124 A.3d at 325, 327 (trial court properly refused to submit to arbitration the survival claim of deceased's son/plaintiff (and purported POA agent), who had signed the arbitration agreement on the deceased's behalf upon admission to the nursing home, where the **POA agreement was never produced** and the trial court found no agency relationship). Conversely, Appellants produced the POA Agreement, and Frank acted as POA in signing the Arbitration Agreement. **See** Trial Court Opinion, 11/23/20, at 7 (stating Frank signed the Arbitration Agreement as Decedent's POA); **cf. Wisler**, 124 A.3d at 320-21.

We next address the propriety of the trial court's ruling.

In an appeal from an order overruling preliminary objections seeking to compel arbitration, our review "is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition." **Pisano v. Extendicare Homes, Inc.**, 77 A.3d 651, 654 (Pa. Super. 2013) (quotation marks omitted). We "employ a two-part test to determine whether the trial court should have compelled arbitration: (1) whether a valid agreement to arbitrate exists, and (2) whether the dispute is within the scope of the agreement." **Davis v. Ctr. Mgmt. Grp., LLC**, 192 A.3d 173, 180 (Pa. Super. 2018) (citation and brackets

- 7 -

omitted). "When addressing the issue of whether there is a valid agreement to arbitrate, courts generally should apply ordinary state-law principles that govern the formation of contracts, but in doing so, must give due regard to the federal policy favoring arbitration." **Cardinal v. Kindred Healthcare, Inc.**, 155 A.3d 46, 53 (Pa. Super. 2017) (citation omitted).

> We have explained:
>
> Pennsylvania has a well-established public policy that favors arbitration, and this policy aligns with the federal approach expressed in the Federal Arbitration Act ("FAA")[, 9 U.S.C.S. §§ 1–16]. The fundamental purpose of the Federal Arbitration Act is to relieve the parties from expensive litigation and to help ease the current congestion of court calendars. Its passage was a congressional declaration of a liberal federal policy favoring arbitration agreements.

**Pisano**, 77 A.3d at 660 (internal citations, brackets and quotations omitted). However, we cautioned that "the existence of an arbitration provision and a liberal policy favoring arbitration does not require the rubber stamping of all disputes as subject to arbitration." **Id.** at 661 (citation omitted).

Finally, state laws that prohibit arbitration of particular types of claims conflict with and are preempted by the FAA, and are thus invalid under the Supremacy Clause of the United States Constitution. **In re Estate of Atkinson**, 231 A.3d 891, 900 (Pa. Super. 2020) (citing **Marmet Health Care Center, Inc. v. Brown**, 565 U.S. 530, 532-33 (2012)).

In the instant case, the trial court correctly explained the holding in **Pisano**, *i.e.*, that Pennsylvania's wrongful death statute creates an independent action, distinct from a survival claim, which is not derivative of

the rights of the decedent, and therefore, a decedent's "contractual agreement with [a nursing home] to arbitrate all claims [is] not binding on the non-signatory wrongful death claimants." *Pisano*, 77 A.3d at 663; *see also* Trial Court Opinion, 11/23/20, at 8-9.

Yet subsequently, in the landmark decision *Taylor v. Extendicare Health Facilities, Inc.*, 147 A.3d 490 (Pa. 2016), the Pennsylvania Supreme Court held that where there is a valid arbitration agreement between a decedent and a nursing home, survival claims must proceed to arbitration despite the existence of an accompanying wrongful death claim. *See id.* at 507-11. The Supreme Court found the trial court erred in denying defendant/nursing home's motion to compel arbitration of plaintiff's survival claim where a valid arbitration agreement existed. *Id.* at 509-10 (holding FAA preempted trial court's application of Pa.R.C.P. 213(e), which requires the consolidation of survival and wrongful death actions for trial). The Supreme Court stated:

> [T]he prospect of inefficient, piecemeal litigation proceeding in separate forums is no impediment to the arbitration of arbitrable claims. Indeed, where a plaintiff has multiple disputes with separate defendants arising from the same incident, and only one of those claims is subject to an arbitration agreement, the [United States Supreme] Court requires, as a matter of law, adjudication in separate forums.

*Id.* at 507. The Court concluded:

> [S]olicitous of our obligation to consider questions of arbitrability with a "healthy regard for the federal policy favoring arbitration," *Moses H. Cone* [*Mem'l Hosp. v. Mercury Constr. Corp.*], 460 U.S. [1,] 20 [(1983)], we observe that Section 2 of the FAA binds

- 9 -

state courts to compel arbitration of claims subject to an arbitration agreement. 9 U.S.C. § 2 (providing that arbitration agreements "shall be valid, irrevocable, and enforceable"). **This directive is mandatory**, requiring parties to proceed to arbitration on issues subject to a valid arbitration agreement, even if a state law would otherwise exclude it from arbitration. ***Mastrobuono v. Shearson Lehman Hutton, Inc.***, 514 U.S. 52, 58, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995).

The **only exception** to a state's obligation to enforce an arbitration agreement is provided by the savings clause, which permits the application of generally applicable **state contract law defenses** such as fraud, duress, or unconscionability, to determine whether a valid contract exists.

***Taylor***, 147 A.3d at 509 (emphasis added; some citations and footnote omitted).

Here, the trial court briefly acknowledged ***Taylor***'s holding, but declined to submit Gollick's survival claim to arbitration because: "Without a logical argument as to intent by [D]ecedent, this court cannot simply view 'the existence of an arbitration provision, coupled with a liberal policy favoring arbitration and rubber stamp all disputes as subject to arbitration.'" Trial Court Opinion, 11/23/20, at 8-10 (quoting ***Pisano***, 77 A.3d at 661 (citation omitted)). The trial court did not elaborate further, and this single cursory sentence is the only reasoning the trial court provides for finding the Arbitration Agreement unenforceable.

Appellants challenge the trial court's application of case law, arguing:

[C]onsistent with the FAA and the Pennsylvania Supreme Court's holding in ***Taylor***, Pennsylvania law requires enforcement of arbitration provisions as written, "permitting such provisions to be set aside only for generally recognized contract defenses such as duress, illegality, fraud, and unconscionability." ***Gaffer Ins. Co.***

- 10 -

[*v. Discover Reinsurance Co., Ltd.*], 936 A.2d 1109, 1114 (Pa. Super. 2007) [(citation omitted); *see also Taylor*, *supra*]. **The trial court here made no findings whatsoever concerning such accepted defenses** as lack of authority, lack of capacity, fraud or duress. Instead, it simply chose to ignore settled law in refusing to submit the survival claim to arbitration.

\* \* \*

Although the trial court did acknowledge the Supreme Court's decision in *Taylor* as holding that survival claims and wrongful death claims must be bifurcated, in reality[, the trial court] simply chose not to follow *Taylor* at all. [The court] did so on the dubious basis about a "lack of evidence" regarding the [D]ecedent's intent. This position directly contradicts *Taylor*.

Appellants' Brief at 13-14 (emphasis added; some capitalization omitted).

Appellants contend the trial court essentially, and incorrectly, ruled "when an Agreement provides 'all disputes' should be submitted to arbitration, and wrongful death claims, by operation of Pennsylvania law, cannot be arbitrated, the entire Agreement is void." *Id.* at 14-15.

We are persuaded by Appellants' argument and conclude the trial court abused its discretion in refusing to enforce the Arbitration Agreement and permit Gollick's survival claim to proceed to arbitration. The Pennsylvania Supreme Court in *Taylor* unequivocally held: "The only exception to a state's obligation to enforce an arbitration agreement" is when a state contract law defense (such as unconscionability) is pled and proven. *Taylor*, 147 A.3d at 509. In this case, **the trial court never made a finding that any state contract defense existed, nor did Gollick plead any such defense**. Thus, pursuant to *Taylor* and its progeny, the trial court should have

- 11 -

submitted Gollick's survival claim to binding arbitration. ***See id.***; ***see also***

***Cardinal***, 155 A.3d at 54-55 (applying ***Taylor*** and finding trial court error for

failure to submit survival claim to arbitration pursuant to an enforceable

agreement to arbitrate between nursing home and decedent).

Our independent review reveals the Arbitration Agreement was

enforceable. The Agreement provides:

**RESIDENT AND FACILITY ARBITRATION AGREEMENT**

**(<u>NOT A CONDITION OF ADMISSION – READ CAREFULLY</u>)**

- **Disputes to be Arbitrated.**
  Any and all disputes, legal controversies, disagreements or claims of any kind now existing or occurring in the future between the Resident and the Facility, arising out of or in any way relating to this Agreement or the Resident's stay, shall be settled by binding arbitration, including, but not limited to claims for negligence, medical malpractice, wrongful death, tort, breach of statutory duty, breach of contract, resident rights, any joint or consolidated claims, and any departures from standard care. This includes claims against the Facility, its employees, agents, officers, directors, any parent, subsidiary or affiliate of the facility.

  \* \* \*

- **<u>Right to Cancel Agreement</u>.**
  **The Resident and the Resident's legal representative has the right to cancel this Agreement by notifying the Facility in writing. Such notice must be sent via certified mail to the attention of the Administrator of the Facility, and the notice must be post marked within sixty (60) days of the date upon which this Agreement was signed.**

- **<u>Resident Understanding & Acknowledgment Regarding Arbitration</u>.**
  By signing this Agreement, the Resident acknowledges that he/she has been informed that:

**(1) This Agreement shall not limit in any way his/her right to file formal or informal grievances with the Facility or the State or Federal government, including the right to challenge a proposed transfer or discharge;**
**(2) Signing this Agreement is not a condition of admission, and that care and treatment will be provided to the Resident whether or he/she signs this Agreement;**
**(3) The decision whether to sign the Agreement is voluntary and solely a matter for the Resident's determination without any influences;**
**(4) All of the terms of the Agreement have been explained to the Resident and the Resident [*sic*] and/or Representative;**
**(5) The Resident has received a copy of this Agreement;**
**(6) The Resident has had an opportunity to ask questions about this Agreement;**
**(7) The Resident has had an opportunity to read this Agreement and propose edits or revised terms or alter the Agreement;**
**(8) The Resident has the right to seek legal counsel regarding this Agreement and has been advised to retain legal counsel before signing this Agreement; and**
***(9) THE PARTIES UNDERSTAND THAT BY ENTERING INTO THIS AGREEMENT, THE PARTIES ARE GIVING UP THEIR CONSTITUTIONAL RIGHT TO HAVE ANY CLAIM DECIDED IN A COURT OF LAW BEFORE A JUDGE AND A JURY, AS WELL AS ANY APPEAL FROM A DECISION OR AWARD OF DAMAGES.***

Arbitration Agreement, 11/2/18, at 1, 3-4 (unnumbered) (bold, italics and underline in original).

This Court has previously rejected claims of unconscionability in nursing home arbitration agreements that were very similar to the Arbitration Agreement in this case. In **Cardinal**, for instance, we held the trial court erred in finding a nursing home arbitration agreement unconscionable and unenforceable, "without even referencing the FAA or [Pennsylvania's statutory counterpart], much less giving due regard to their policy underpinnings

- 13 -

favoring arbitration." ***Cardinal***, 155 A.3d at 53. This Court held that the arbitration agreement, which was worded similarly to the Arbitration Agreement in this case, was not unconscionable, and thus plaintiff's survival claim must proceed to arbitration, with the wrongful death claim bifurcated. ***See id.*** at 53-55 (relying on this Court's decision in ***MacPherson v. Magee Mem'l Hosp. for Convalescence***, 128 A.3d 1209 (Pa. Super. 2015) (*en banc*)).

The ***MacPherson*** Court likewise held that an arbitration agreement between the defendant nursing home (Manor Care) and patient was enforceable and not unconscionable where the agreement contained the following terms: (1) "the parties pay their own fees and costs"; (2) a provision allowing the patient to rescind within thirty days; (3) "Manor Care will pay the arbitrators' fees and costs"; (4) a statement that there are no caps or limits on damages other than those imposed by state law; (5) "a conspicuous, large, bolded notification [stating] that the parties, by signing, are waiving the right to a trial before a judge or jury"; and (6) a "bold typeface and underlined [notice stating] the [a]greement . . . is voluntary, and if the patient refused to sign it, 'the Patient will still be allowed to live in, and receive services' at Manor Care." ***MacPherson***, 128 A.3d at 1221-22.

Accordingly, even if Gollick had challenged the Arbitration Agreement as being unconscionable, the claim would fail.

Consistent with the foregoing, we conclude the Arbitration Agreement requires that Gollick's survival claim be submitted to arbitration, and the trial court abused its discretion in ruling otherwise. We therefore reverse the order denying Appellants' POs and remand to the trial court for proceedings consistent with this decision.

Order reversed. Case remanded for further proceedings consistent with this decision. Jurisdiction relinquished.

Judge King joins the memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/29/2021