Chief Justice Saylor and Justices Baer, Todd, Dougherty, Wecht and Mundy join the opinion.

**Bret CARDINAL, as Executor for the Estate of Carmen Cardinal, Deceased, Appellee**

v.

**KINDRED HEALTHCARE, INC., and Personacare of Reading, Inc., d/b/a Kindred Transitional Care and Rehabilitation–Wyomissing, and Kindred Nursing Centers East, LLC, and Kindred Healthcare Operating, Inc., and Monique Cole, NHA, Appellants**

**No. 1547 MDA 2014**

Superior Court of Pennsylvania.

Submitted October 27, 2015
FILED JANUARY 27, 2017
Reargument Denied April 3, 2017

Ira L. Podheiser, Pittsburgh, and John M. Skrocki, West Conshohocken, for appellants.

Stephen Trzcinski, Philadelphia, for appellee.

BEFORE: PANELLA, J., LAZARUS, J., and PLATT, J.*

OPINION BY LAZARUS, J.:

Kindred Healthcare, Inc., Personacare of Reading, Inc., d/b/a Kindred Transitional Care and Rehabilitation–Wyomissing, Kindred Nursing Centers East, LLC, Kin-

---

* Retired Senior Judge assigned to the Superior Court.

dred Healthcare Operating, Inc., and Monique Cole, NHA (collectively, "Kindred"), appeal from the order entered in the Court of Common Pleas of Berks County, overruling Kindred's preliminary objections to the complaint filed by Bret Cardinal, Executor of the Will of Carmen Cardinal, Deceased ("Cardinal"). Upon careful review, we reverse.

This action involves claims of negligence on the part of Kindred in relation to care rendered to Carmen Cardinal ("Decedent") during his stay as a patient at a Kindred facility. Cardinal filed a complaint on October 7, 2013, alleging claims of negligence, corporate negligence, custodial neglect and wrongful death. Kindred filed preliminary objections on November 5, 2013, seeking, *inter alia*, to enforce an arbitration agreement signed by Decedent upon admission to Kindred. Cardinal filed a response, in which he asserted that the agreement was "unenforceable, void, unconscionable, and/or a contract of adhesion." Plaintiff's Answer to Preliminary Objections, 11/25/13, at ¶ 4. Cardinal also claimed that the agreement "was signed under duress or by someone without proper legal authority." *Id.* The parties engaged in limited discovery on the issue of arbitration and filed supplemental briefs. Following oral argument, the trial court issued an order on August 18, 2013, overruling Kindred's preliminary objections and directing Kindred to file a response to Cardinal's complaint.

■ This timely appeal follows,[1] in which Kindred raises the following issues for our review:[2]

1. Whether the [t]rial [c]ourt erred in overruling Kindred's preliminary objec-

tions seeking to enforce an [a]lternative [d]ispute [r]esolution [a]greement signed by [p]laintiff's [d]ecedent, Carmen Cardinal, who had the capacity to execute the ADR [a]greement on his own behalf?

2. Whether the [t]rial [c]ourt erred by failing to conclude that by signing various other medical-legal documents during his stay at Kindred, [p]laintiff is now estopped from disavowing the [a]greement now?

3. Whether the [t]rial [c]ourt erred in failing to apply the policies favoring arbitration contained in the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"), the Pennsylvania Uniform Arbitration Act ("PUAA"), and extensive case law interpreting same?

4. Whether the [t]rial [c]ourt erred in failing to conclude that the [a]greement itself sets forth in direct and understandable terms the material terms of [a]lternative [d]ispute [r]esolution?

5. Whether the [t]rial [c]ourt erred in its application of *Pisano v. Extendicare Homes, Inc.*, 77 A.3d 651 (Pa. Super. 2013), *appeal denied*, 624 Pa. 683, 86 A.3d 233 (Pa. 2014), *cert. denied, Extendicare Homes, Inc. v. Pisano*, —— U.S. ——, 134 S.Ct. 2890, 189 L.Ed.2d 838 (2014), in that there are no beneficiaries designated by the statute who can recover under the Wrongful Death Act, 42 Pa.C.S. § 8301(b), in this case?

Brief of Appellants, at 4–5.

■ We begin by noting that our review of a claim that the trial court improperly denied preliminary objections in the nature of a petition to compel arbitration is limited to determining whether the trial court's

---

1. An order overruling preliminary objections seeking to compel arbitration is immediately appealable as an interlocutory appeal as of right pursuant to 42 Pa.C.S.A. § 7320(a) and Pa.R.A.P. 311(a)(8). *See Gaffer Ins. Co., Ltd.*

*v. Discover Reinsurance Co.*, 936 A.2d 1109, 1110 n.2 (Pa. Super. 2007).

2. We have renumbered Kindred's issues for ease of disposition.

findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition. *Gaffer*, 936 A.2d at 1112. As contract interpretation is a question of law, our review of the trial court's decision is *de novo* and our scope is plenary. *Id.* citing *Bucks Orthopaedic Surgery Associates, P.C. v. Ruth*, 925 A.2d 868, 871 (Pa. Super. 2007).

■ Kindred's first two issues challenge the trial court's finding that Decedent lacked capacity to execute the arbitration agreement. Kindred argues that there is insufficient factual support in the record to support the court's conclusion and further asserts that Cardinal should be estopped from denying Decedent's capacity because Cardinal "seeks to impose a duty based on [the admissions agreement], yet claims[ ] that [Decedent] was incapable of understanding [other] documents [executed simultaneously] that contained legal concepts." Brief of Appellants, at 24.

■ Arbitration agreements are matters of contract. Under Pennsylvania law, it is presumed that an adult is competent to enter into an agreement, and a signed document gives rise to the presumption that it accurately expresses the state of mind of the signing party. *Estate of McGovern v. Com. State Employees' Ret. Bd.*, 512 Pa. 377, 517 A.2d 523, 526 (1986). To rebut this presumption, the challenger must present evidence of mental incompetency which is clear, precise and convincing. *Id.* This burden of proof requires that

> the witnesses must be found to be credible, that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct, weighty and convincing as to enable the [finder of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.

*Evans v. Marks*, 421 Pa. 146, 218 A.2d 802, 804 (1966).

> [W]here mental capacity to execute an instrument is at issue, the real question is the condition of the person at the very time he executed the instrument . . . in question[. A] person's mental capacity is best determined by his spoken words and his conduct, and [ ] the testimony of persons who observed such conduct on the date in question outranks testimony as to observations made prior to and subsequent to that date. Mere mental weakness, if it does not amount to inability to comprehend the contract, and is unaccompanied by evidence of imposition or undue influence, is insufficient to set aside a contract.

*Id.* (citations and quotation marks omitted).

■ Moreover, "[i]t is well settled that mere weakness of intellect resulting from sickness or old age is not legal grounds to set aside an executed contract if sufficient intelligence remains to comprehend the nature and character of the transaction, and no evidence of fraud, mutual mistake or undue influence is present." *Taylor v. Avi*, 272 Pa.Super. 291, 415 A.2d 894, 897 (Pa. Super. 1979) (citations omitted). "[F]ailure of memory does not prove incapacity, unless it is total or so extended as to make incapacity practically certain. A testator may not be able at all times to recollect the names of persons or families of those with whom he has been intimately acquainted . . . and yet his understanding of the ordinary transactions of his life may be sound." *Id.* quoting *Lawrence's Estate*, 286 Pa. 58, 132 A. 786, 789 (1926).

The trial court addressed this issue as follows:

> In 2008, [Decedent] executed a Power of Attorney document, granting Bret Cardinal specific powers. [Decedent]

was admitted to [Kindred] on June 21, 2012. The Arbitration Agreement was signed by [Decedent] on June 22, 2012. The Resident Progress Notes from both of those days indicate that [Decedent] was "alert" but with "confusion." Furthermore, records from the Reading Hospital on June 21, 2012 indicate that [Decedent] was lethargic, disoriented and disoriented to time.

Maria Reyes was the person responsible for conducting admissions in 2012 at the Kindred Facility. Ms. Reyes testified at her deposition that she never advised residents to have an attorney review arbitration agreements. It is clear to this [c]ourt that Maria Reyes did not know that [Decedent] had a Power of Attorney when she had him sign the Arbitration agreement. Maria Reyes further testified that she did not have a full understanding of the Arbitration Agreement itself nor an understanding of the rights [Decedent] was giving up by signing the Agreement, such as the right to a jury trial. Ms. Reyes additionally stated that [Decedent] also had difficulty signing the documents.

This [c]ourt is convinced that [Decedent] was incompetent to sign the Arbitration Agreement. [Decedent] executed a Power of Attorney document in 2008. While the execution of a power of attorney does not necessarily mean that the principal will soon be incapacitated, it may strongly suggest a lack of confidence in his or her ability to manage property and protect his or her rights. On the day of [Decedent's] admission to [Kindred], the medical records from Reading Hospital indicated [he] was lethargic, disoriented and disoriented to time. The following day, on which the Agreement was executed, Resident Progress Notes from [Kindred] indicate that [Decedent] had

"confusion." Ms. Reyes also admitted that [Decedent] had trouble signing the Agreement. All of these facts taken together make it abundantly clear to this [c]ourt that [Decedent] was not of sound mental capacity to comprehend the arbitration agreement and enter into it knowingly and voluntarily.

Trial Court Opinion, 12/15/14, at 3–4 (internal citation omitted).

Our review of the record in this matter leads us to the conclusion that there does not exist clear, precise and convincing evidence to support the trial court's determination that Decedent lacked capacity to enter into the arbitration agreement. First, the trial court's focus on the knowledge possessed by Kindred employee Maria Reyes regarding the contents and implications of the agreement is misplaced. It is irrelevant to this inquiry what Reyes knew or did not know about the agreement. Rather, our concern is whether clear and convincing evidence exists on the record to demonstrate that Decedent lacked capacity to enter into the contract. It is his state of mind, and not Reyes, that must be the focus of our inquiry.

■ Second, we flatly reject the trial court's reliance on the fact that Decedent had, some years prior to signing the agreement, executed a power of attorney in favor of his nephew, Appellee herein. The mere existence of a power of attorney can in no way be construed as indicia of incapacity on the part of the principal. Powers of attorney are executed for many and various reasons, including simple convenience, and are a routine component of the estate planning process. The court's suggestion that Decedent's power of attorney evidenced his incapacity is wholly unsupported by our case law,[3] based on flawed

---

**3.** In its opinion, the trial court cites to *In re*   *Brubaker,* 27 Pa. D. & C.4th 220 (Blair Cty.

reasoning,[4] and not supported by any facts of record in this matter.

Finally, the trial court supports its conclusion that Decedent lacked capacity by reference to statements made in medical records and progress notes from Reading Hospital and Kindred. The court notes that, on the day Decedent was admitted to Kindred, June 21, 2012, "medical records from Reading Hospital indicated [he] was lethargic, disoriented and disoriented to time." *Id.* at 4. The court further states that, on June 22, 2012, the day Decedent executed the agreement, Kindred's progress notes indicate the he "had 'confusion.'" *Id.* The court also cites the testimony of Maria Reyes, who stated that Decedent had difficulty affixing his signature to the agreement. *See id.* However, the court omits reference to other notations from the dates in question, indicating that Decedent was "awake, alert, [and] oriented" on June 21, 2012 and "alert [and] oriented" on June 22, 2012, the very date the agreement was executed. *See Evans, supra* (conduct on date in question outranks observations made prior to and subsequent to that date). Moreover, with respect to the court's reliance on Reyes testimony that Decedent had difficulty signing his name, a review of the deposition transcript reveals that Reyes went on to acknowledge that she actually had no independent recollection of Decedent's ability to sign his name during her meeting with him. *See* Maria Reyes Deposition, 5/14/14, at 40. Additionally, the court ignored Reyes testimony that Decedent was able to express other preferences, such as his desire to decline the facility's assistance with the management of his personal funds and his wish to have his bills submitted directly to Medicare. *See id.* at 42–43.

In sum, the record does not contain clear and convincing evidence that Decedent lacked the capacity to execute the arbitration agreement on June 22, 2012. To be sure, Decedent was an elderly man suffering from physical infirmity and exhibiting some amount of confusion. However, the evidence presented in this matter is not of such a "clear, direct, weighty and convincing" nature, such that we can agree with the trial court's conclusion that Decedent lacked capacity to execute the agreement. *See Evans, supra.*

Kindred's next two issues challenge the trial court's conclusion that the arbitration agreement in question is unenforceable because it is substantively and procedurally unconscionable. Kindred asserts that, in declining to enforce the agreement, the court failed in its obligation to apply the policies favoring arbitration contained in the FAA and PUAA. Kindred argues that the agreement sets forth in direct and understandable terms the material terms of alternative dispute resolution.

As this Court recently explained:

Pennsylvania has a well-established public policy that favors arbitration, and this policy aligns with the federal approach expressed in the [FAA]. The fundamental purpose of the [FAA] is to relieve the parties from expensive litigation and to help ease the current congestion of court calendars. Its passage was a congres-

---

1994), for the proposition that the execution of a power of attorney "may strongly suggest a lack of confidence in his or her ability to manage property and protect his or her rights." Trial Court Opinion, 12/29/13, at 4. However, there is nothing in *Brubaker*—

which in any event is not binding on this Court—to support that statement.

**4.** To be valid, a power of attorney must be executed by one possessing the capacity to do so.

sional declaration of a liberal federal policy favoring arbitration agreements. *MacPherson v. Magee Meml Hosp. for Convalescence*, 128 A.3d 1209, 1219 (Pa. Super. 2015) (en banc), quoting *Pisano v. Extendicare Homes, Inc.*, 77 A.3d 651, 661 (Pa. Super. 2013) (citations, quotation marks, and footnote omitted). When addressing the issue of whether there is a valid agreement to arbitrate, courts generally should apply ordinary state-law principles that govern the formation of contracts, but in doing so, must give due regard to the federal policy favoring arbitration. *Gaffer*, 936 A.2d at 1114.

Here, the trial court made its determination as to unconscionability without even referencing the FAA or PUAA, much less giving due regard to their policy underpinnings favoring arbitration.

"Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *MacPherson*, 128 A.3d at 1221, quoting *Williams v. Walker–Thomas Furniture Company*, 350 F.2d 445, 449 (D.C. Cir. 1965). The party challenging the agreement bears the burden of proof. *Salley v. Option One Mortg. Corp.*, 592 Pa. 323, 925 A.2d 115, 129 (2007).

An unconscionability analysis requires a two-fold determination: (1) that the contractual terms are unreasonably favorable to the drafter ("substantive unconscionability"), and (2) that there is no meaningful choice on the part of the other party regarding the acceptance of the provisions ("procedural unconscionability"). *MacPherson*, 128 A.3d at 1221 (citations omitted). Courts have refused to hold contracts unconscionable simply because of a disparity of bargaining power between the two parties. *Witmer v. Exxon Corp.*, 495

Pa. 540, 434 A.2d 1222, 1228 (1981); *see also K & C, Inc. v. Westinghouse Electric Corp.*, 437 Pa. 303, 263 A.2d 390 (1970).

In *MacPherson, supra*, this Court examined a similar arbitration agreement and concluded that it was neither procedurally nor substantively unconscionable. In reaching that conclusion, we noted the following terms contained in the agreement: (1) the parties shall pay pay their own fees and costs, similar to civil litigation practice in common pleas court; (2) a conspicuous, large, bolded notification that the parties, by signing, are waiving the right to a trial before a judge or jury; (3) a notification at the top of the agreement, in bold typeface and underlined, that it is voluntary, and if the patient refuses to sign it, "the Patient will still be allowed to live in, and receive services" at the facility; (4) a provision that the facility will pay the arbitrators fees and costs; (5) a statement that there are no caps or limits on damages other than those already imposed by state law; and (6) a provision allowing the patient to rescind within thirty days. *Id.* at 1221–22.

Similarly, here, the arbitration agreement signed by the Decedent contains a capitalized, bold-faced notification at the very top of the agreement stating: "THIS AGREEMENT IS NOT A CONDITION OF ADMISSION TO OR CONTINUED RESIDENCE IN THE FACILITY." Arbitration Agreement, 6/22/12, at 1. Also highlighted in boldface, underlined, capital letters on the first page of the agreement is a statement that:

THE PARTIES UNDERSTAND, ACKNOWLEDGE, AND AGREE THAT BY ENTERING INTO THIS AGREEMENT THEY ARE GIVING UP THEIR CONSTITUTIONAL RIGHT TO HAVE THEIR DISPUTES DECIDED BY A COURT OF LAW OR

**TO APPEAL ANY DECISION OR AWARD OF DAMAGES RESULTING FROM THE ADR PROCESS EXCEPT AS PROVIDED HEREIN.**

*Id.* at ¶ II. The agreement states that the parties will each bear their own fees and costs, that Kindred shall pay the arbitrators fees and costs, and that the monetary relief available via arbitration is the same as that which would be available in a court of law. Finally, the agreement states as follows:

> The Resident understands that he or she has the right to seek advice of legal counsel and to consult with a Facility representative concerning this Agreement; that his or her signing of this Agreement is not a condition of admission to or continued residence in the Facility; that he or she may revoke this Agreement by sending written notice to the Facility within thirty (30) days of signing it[.]

*Id.* at ¶ XII.

Our review of the agreement compels the conclusion that, like the agreement in *MacPherson*, the Kindred agreement is neither procedurally nor substantively unconscionable, and that the trial court erred in refusing to enforce it on those grounds. In light of this finding, the liberal policy favoring arbitration, and our conclusion that the court erred in determining that Decedent lacked capacity to execute the agreement, we are compelled to remand the matter to the trial court for referral to arbitration.

Finally, Kindred claims that the trial court erred in overruling its preliminary application in the form of a demurrer to Cardinal's wrongful death claim. Specifically, in its preliminary objections, Kindred sought to pre-emptively challenge the trial court's anticipated application of this Court's decision in *Pisano v. Extendicare Homes, Inc.*, 77 A.3d 651 (Pa. Super. 2013), to bar arbitration of not only Cardinal's wrongful death claim, but also the survival claim, based upon Pa.R.C.P. 213(e), which requires consolidation for trial of wrongful death and survival claims. In *Pisano*, this Court held that wrongful death beneficiaries could not be bound by an agreement to arbitrate entered into by or on behalf of a decedent. In light of *Pisano*, Kindred anticipated that the trial court might conclude that, because the wrongful death claims were required to be tried in a court of law, and because Rule 213(e) requires that wrongful death and survival claims be tried together, Cardinal's survival claims could not be subject to arbitration, regardless of the validity of the underlying arbitration agreement.

However, since we decided *Pisano*, our Supreme Court issued its decision in *Taylor v. Extendicare Health Facilities, Inc.*, 147 A.3d 490 (Pa. 2016). There, the Court held that the FAA's mandate in favor of enforcement of arbitration agreements preempts Rule 213(e) and requires bifurcation of wrongful death and survival actions. Accordingly, the existence of a wrongful death claim may no longer provide the basis for requiring trial in a court of law as to the entire action.[5]

---

**5.** In any event, here, there are no statutory beneficiaries entitled to recover under section 8301(b) of the Wrongful Death Act, which limits the right of action to a decedent's spouse, children and parents. Thus, Cardinal's claim under the Act is limited to damages under section 8301(d), which allows for recovery by the decedent's estate for "reasonable hospital, nursing, medical, funeral expenses and expenses of administration necessitated by reason of injuries causing death." 42 Pa.C.S. § 8301(d). This Court has held that, where a potential recovery under the Act is limited to damages under section 8301(d) for the benefit of the decedent's estate, the claim may be consolidated with the survival claim and referred to arbitration. *See MacPherson*, 128 A.3d at 1227.

For the foregoing reasons, we conclude that Kindred and Decedent entered into a binding agreement to arbitrate, which must be enforced by the trial court. Accordingly, we remand the matter to the trial court for proceedings consistent with the dictates of this opinion.

Order reversed; case remanded; jurisdiction relinquished.