J-A07023-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SHARON PETICCA, INDIVIUDALLY AND AS ADMINISTRATRIX OF THE ESTATE OF GENE LESTER HEDRICK, DECEASED | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| | : | No. 2109 EDA 2018 |
| CHATHAM ACRES HEALTHCARE GROUP, INC., D/B/A TWIN PINES HEALTH CARE CENTER; SABER HEALTHCARE  GROUP, LLC; MARILYN KNAUB, M.D. C/O  CHATHAM ACRES HEALTHCARE GROUP, INC.  D/B/A/ TWIN PINES; AUTUMN SMITH, CRNP | : : : : : : : : | |
| Appellant | : | |

Appeal from the Order Entered June 20, 2018
In the Court of Common Pleas of Chester County Civil Division at No(s):
No. 2017-00724-PL

BEFORE:   OLSON, J., DUBOW, J., and STEVENS*, P.J.E.

MEMORANDUM BY DUBOW, J.:                    **FILED AUGUST 14, 2019**

Appellants, Chatham Acres Healthcare Group, Inc., d/b/a Twin Pines Health Care Center, and Saber Healthcare Group, LLC, appeal from the Order entered June 20, 2018, which overruled Preliminary Objections seeking to enforce an arbitration agreement.  We affirm.

Except as noted, we derive the following statement of relevant facts and procedural history from the trial court Opinion, which is supported by the record.  **See** Trial Ct. Op., filed 9/5/18, at 1-2.

_____

* Former Justice specially assigned to the Superior Court.

In August 2015, Gene Lester Hedrick (the decedent) fell and fractured his right femur. He arrived by ambulance at Chester County Hospital where he underwent surgery. Thereafter, on September 3, 2015, upon discharge from the hospital, the decedent transferred to Twin Pines Health Care Center. The decedent subsequently died.

Based upon allegedly improper treatment provided by Appellants, the decedent's wife, Appellee Sharon Peticca, commenced this litigation individually and as the administratrix of the decedent's estate. *See* Amended Complaint, 3/27/17. In response, Appellants filed Preliminary Objections, in relevant part asserting that the decedent had executed a voluntary and valid Arbitration Agreement upon his admission to Twin Pines. Appellants' Preliminary Objections, 4/12/17, at ¶ 10-11, Exhibit B ("Arbitration Agreement"). Thus, according to Appellants, Appellee's claims should proceed to arbitration. *Id.* at ¶ 33. Appellee challenged Appellants' objections, asserting the Arbitration Agreement was neither valid nor enforceable. *See* Appellees' Answer to Preliminary Objections, 5/2/17.

The parties proceeded to discovery to develop a factual record on the issue of arbitration. During her deposition, Appellee testified that the decedent was "confused" and "couldn't understand anything" on the day of his admission to Twin Pines. Appellee's Supplemental Memorandum, 1/16/18, Exhibit A (Appellee's Deposition, 12/20/17, at 7, 9). Specifically, for example, Appellee described her interaction with the decedent just prior to his transfer:

[B]efore he left for the Twin Pines place he asked me what I was doing there because he had a[] . . . meeting and he always had an aide with him, a guy aide. And I looked at [him] and he looked at me and smiled. And I'm like, O[h], okay. He said well, you can't stay, I have to go there.

Appellee's Deposition at 7. Appellee further clarified that the decedent had been a school administrator. *Id.* at 8. Appellee continued:

I guess he thought he was [at work] the whole time he was in the hospital because he kept calling the nurse by his secretary's name.

*Id.* According to Appellee, the decedent had retired in 2010. *Id.* at 9.

Appellee also described an incident that occurred later that same day, after the decedent's transfer. According to Appellee, she brought her granddaughter to visit the decedent. *Id.* at 13. However, he did not recognize the child, and "it started to scare her." *Id.*

Appellee secured deposition testimony from the decedent's son and step-daughter. Both relayed similar observations of the decedent from the day he transferred to Twin Pines. For example, Troy Hedrick, who resided in Schwenksville, PA, testified as follows:

I went into his room and [Appellee] had said Troy is here and he said oh, he came from Seattle? And I haven't lived in Seattle for years and he also was at my house when they lost power. He came and stayed until the power was restored. He knew where I lived. It was a little bit shocking when that came out of his mouth.

Appellee's Supplemental Memorandum, Exhibit C (Troy Hedrick's Deposition, 12/20/17, at 9); *see also id.*, Exhibit B (Brooke Bickley's Deposition,

12/20/17, at 10 (asserting that, on September 3, 2015, the decedent did not recognize her or realize where he was).

For their part, Appellants secured deposition testimony from two employees at the Twin Pines facility. *See* Appellants' Supplemental Brief, 1/17/18, Exhibit F (Virginia Draper's Deposition, 1/9/18), Exhibit G (David Szczepanik's Deposition, 1/5/18). However, Ms. Draper, who served as the admissions director of Twin Pines at the time of the decedent's transfer and completed all admissions paperwork including the Arbitration Agreement, testified that she had no specific recollection of her involvement with the decedent. Virginia Draper's Deposition at 13. Similarly, Mr. Szczepanik had "no memory of [the decedent's] care." David Szczepanik's Deposition at 7.

Based on this testimony, following additional briefing and oral argument, the trial court determined that the decedent did not have the requisite capacity to sign the Arbitration Agreement. Trial Ct. Order, 6/20/18, at 2 n.1 (unpaginated). Accordingly, the court overruled Appellants' Preliminary Objections seeking to enforce the agreement. *Id.* at 1 (unpaginated).

Appellants timely appealed. The trial court did not direct Appellants' compliance with Pa.R.A.P. 1925(b) but issued an Opinion in accordance with Pa.R.A.P. 1925(a).

Appellants raise the following issue on appeal:

> Whether the trial court erred in refusing to enforce a [n]ursing [h]ome [a]rbitration [a]greement signed by the [r]esident based on a finding that the [resident] lacked the requisite capacity to understand the [a]greement when signed[.]

Appellants' Br. at 5.

Appellants challenge the trial court's denial of their Preliminary Objections seeking to compel arbitration. Our review "is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying [the objections]." *Gaffer Ins. Co., Ltd. v. Discover Reinsurance Co.*, 936 A.2d 1109, 1112 (Pa. Super. 2007) (citation omitted); *see also In re Condemnation by Urban Redevelopment Auth. of Pittsburgh*, 913 A.2d 178, 183 (Pa. 2006) ("[T]o the extent that factual findings and credibility determinations are at issue, we will accept the trial court's conclusions insofar as they are supported by the record.") (*In re Condemnation*); *C.G. v. J.H.*, 172 A.3d 43, 47, 57 (Pa. Super. 2017) (noting our deference to a trial court's factual findings where those findings are required to resolve preliminary objections).

"Pennsylvania has a well-established public policy that favors arbitration[.]" *MacPherson v. Magee Mem'l Hosp. for Convalescence*, 128 A.3d 1209, 1219 (Pa. Super. 2015) (*en banc*) (citation omitted). With this policy in mind, "we employ a two-part test to determine whether the trial court should have compelled arbitration." *Id.* (citation omitted). First, there must be a valid agreement between the parties to arbitrate. *Id.* Second, the parties' dispute must fall within the scope of the agreement. *Id.*

Here, Appellants dispute the trial court's factual findings, asserting that Appellees failed to rebut the presumptive validity of the Arbitration Agreement

by clear and convincing evidence. *See* Appellants' Br. at 18. Thus, we focus on the first part of the test—whether a valid agreement to arbitrate exists.

An agreement to arbitrate is a contract. ***Bucks Orthopaedic Surgery Assoc., P.C. v. Ruth***, 925 A.2d 868, 872 (Pa. Super. 2005). "It is . . . well settled that in order for an enforceable agreement to exist, there must be a 'meeting of the minds,' whereby both parties mutually assent to the same thing, as evidenced by an offer and its acceptance." ***Prieto Corp. v. Gambone Constr. Co.***, 100 A.3d 602, 609 (Pa. Super. 2014) (citations omitted); ***Quiles v. Fin. Exch. Co.***, 879 A.2d 281, 285 (Pa. Super. 2005) (citations omitted) ("There must be a meeting of minds in order to constitute a contract.").

Initially, the burden is on the party seeking to compel arbitration to demonstrate that a valid agreement to arbitrate existed between the parties. ***Bair v. Manor Care of Elizabethtown, PA, LLC***, 108 A.3d 94, 96 (Pa. Super. 2015); 42 Pa. C.S. § 7304(a). Here, Appellants demonstrated that the decedent signed the Arbitration Agreement upon his admission to the Appellants' facility. This undisputed fact creates a presumption that the decedent understood and agreed to its terms. ***Cardinal v. Kindred Healthcare, Inc.***, 155 A.3d 46, 50 (Pa. Super. 2017) ("[A] signed document gives rise to the presumption that it accurately expresses the state of mind of the signing party."). To overcome this presumption, Appellee was required to present clear and convincing evidence that the decedent did not knowingly agree to arbitrate. ***Id.***

The clear and convincing burden of proof requires "evidence that is so clear, direct, weighty, and convincing as to enable the [fact finder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Rohm and Haas Co. v. Continental Cas. Co.*, 781 A.2d 1172, 1179 (Pa. 2001) (citation and internal quotation marks omitted); *Cardinal*, 155 A.3d at 50.

> [W]here mental capacity to execute an instrument is at issue, the real question is the condition of the person at the very time he executed the instrument . . . in question[. A] person's mental capacity is best determined by his spoken words and his conduct, and [ ] the testimony of persons who observed such conduct on the date in question outranks testimony as to observations made prior to and subsequent to that date. Mere mental weakness, if it does not amount to inability to comprehend the contract, and is unaccompanied by evidence of imposition or undue influence, is insufficient to set aside a contract.

*Cardinal*, 155 A.3d at 50 (citation omitted).

As set forth *supra*, Appellee adduced testimony from several individuals who knew the decedent well. Those individuals observed the decedent's conduct on the day he signed the Arbitration Agreement, each recounting specific incidents that established by clear and convincing evidence that the decedent lacked the mental capacity to execute the agreement. This evidence suggested more than mere mental weakness. Rather, the decedent did not recognize close family members, did not know where he was or what he was doing, and appears to have believed that he remained actively employed despite having retired several years previously. The trial court credited this testimony and discounted the countervailing testimony adduced by

Appellants, whose employees had no specific recollection of the decedent's state of mind on the day of his transfer to Twin Pines. *See* Trial Ct. Order at 2 n.1 (unpaginated).

We defer to the court's findings. *In re Condemnation*, 913 A.2d at 183; **C.G.**, 172 A.3d at 57. Moreover, these findings set forth clear and convincing evidence that the decedent did not knowingly and voluntarily agree to arbitrate his dispute with Appellants. *Cardinal*, 155 A.3d at 50. Thus, there was no "meeting of the minds," and the Arbitration Agreement is not enforceable. *Prieto Corp.*, 100 A.3d at 609; *Quiles*, 879 A.2d at 285. Accordingly, we discern no abuse of discretion in the trial court's denial of Appellants' Preliminary Objections. *Gaffer Ins. Co., Ltd.*, 936 A.2d at 1112.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/14/19