J-A03035-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CAROL SHOTWELL and JAMES HOLMINSKI, JR., ADMINISTRATORS OF THE ESTATE OF VALERIE HOLMINSKI, DECEASED | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : : | |
| v. | : : : | No. 223 MDA 2020 |
| VALLEY CREST NURSING, INC. D/B/A TIMBER RIDGE HEALTH CARE CENTER | | |

Appeal from the Order Entered August 2, 2019
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
201401462

BEFORE:  LAZARUS, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED: AUGUST 5, 2021**

Carol Shotwell and James Holminski, Jr. ("Appellants"), Administrators of the Estate of Valerie Holminski, Deceased ("Decedent"), appeal from the order, entered in the Court of Common Pleas of Luzerne County, granting the preliminary objections of Valley Crest Nursing, Inc., d/b/a Timber Ridge Health Care Center ("Timber Ridge") and referring the Appellants' survival action to binding arbitration.  Upon careful review, we vacate and remand for further proceedings.

This appeal arises from a wrongful death and survival action[1] filed by Appellants; the action arises out of treatment Decedent received while she resided at Timber Ridge, a skilled nursing facility. Appellants alleged that "substandard care rendered to [Decedent] caused her serious injuries and resulted in her death." Brief of Appellants, at 7. Upon her admission to Timber Ridge on October 1, 2008, Decedent executed an arbitration agreement ("Agreement"), pursuant to which the parties agreed that all claims by one party against the other must be arbitrated. Following Decedent's death, Appellants brought the instant action. In response to Appellants' amended complaint, Timber Ridge filed preliminary objections, in which it, *inter alia*, petitioned the court to compel arbitration of the survival claim pursuant to the Agreement.[2]

_____

[1] Pennsylvania's Wrongful Death Act ("Act"), 42 Pa.C.S.A. § 8301, allows the spouse, children, or parents of a decedent to sue another for a wrongful or neglectful act that led to the death of the decedent. ***Hatwood v. Hosp. of the Univ. of Pennsylvania***, 55 A.3d 1229, 1235 (Pa. Super. 2012). Damages in such a matter are the value of the decedent's life to the family, as well as expenses caused to the family by reason of the death. ***Id.*** A survival action under 42 Pa.C.S.A. § 8302 stems from the rights of action possessed by the decedent at the time of his death and provides recovery to the decedent's estate for pain and suffering between the time of injury and the time of death. ***Matharu v. Muir***, 29 A.3d 375, 383 (Pa. Super. 2011).

[2] The parties do not dispute that Appellants' wrongful death claim is not subject to arbitration. ***See Pisano v. Extendicare Homes, Inc.***, 77 A.3d 651 (Pa. Super. 2013) (holding resident's contractual agreement with nursing home to arbitrate all claims was not binding on non-signatory wrongful death claimants).

In their response to the preliminary objections, Appellants asserted that, although Decedent signed the Agreement, it was not entered into voluntarily because she was "legally incompetent to knowingly enter into an agreement." Appellants' Response to Preliminary Objections, 12/11/18, at ¶¶ 14-37. Appellants stated that Decedent had previously been declared "mentally disabled with impaired judgment" by a court and had "carried a diagnosis of schizoaffective disorder for years[.]" *Id.* In support of their claim, Appellants submitted copies of two commitment orders under the Mental Health Procedures Act,[3] dated November 27, 2007 and May 20, 2008, as well as two reports and recommendations of a mental health review officer stating that: (1) Decedent was mentally disabled and, as a result, "her capacity to exercise self-control, judgment[,] and discretion in the conduct of her personal needs is so lessened that she poses a clear and present danger of harm to herself," Report and Recommendation of the Mental Health Review Officer, 5/20/08, at ¶ 1; (2) her judgment was impaired, she had no insight to problems, needs supervision and guidance for treatment, and requires assistance with day-to-day activities; (3) Decedent suffered from schizoaffective disorder with a guarded/poor prognosis; and (4) Decedent required commitment for a period of 180 days. Appellants also submitted additional medical and psychiatric records, as well as an affidavit from Decedent's son, James Holminski, Jr., in which he averred that: Decedent had only a sixth-grade education and a

---

[3] *See* 50 P.S. §§ 7101-7503.

limited ability to read and write; Decedent was subject to cyclical psychotic mental breakdowns and periodic hospitalization; upon admission to various institutions, Holminski "reviewed and approved any documents that required [Decedent's] signature since [she] did not have the capacity to understand the import of legal documents"; a judge had twice ordered Decedent be admitted to a psychiatric facility; and Holminski did not believe Decedent could have understood the documents Timber Ridge asked her to sign upon admission. Holminski Affidavit, 7/19/19, at [1-3].

Following an unsuccessful attempt by the parties at mediation, the trial court held oral argument on Timber Ridges' preliminary objections on July 22, 2019.[4] Thereafter, on August 2, 2019, the court issued an order sustaining Timber Ridge's first preliminary objection, referring the survival action to arbitration, and staying all remaining claims pending the outcome of arbitration.[5] On August 23, 2019, Appellants filed with the trial court a motion to amend the August 2, 2019 order for purposes of taking an interlocutory appeal. *See* 42 Pa.C.S.A. § 702(b);[6] *see also* Pa.R.A.P. 1311(a) ("An appeal

---

[4] The transcript of the July 22, 2019 oral argument is not contained within the certified record.

[5] Timber Ridge's remaining preliminary objections were rendered moot as a result of the court's stay order.

[6] Section 702(b) provides as follows:

When a court . . . in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate

*(Footnote Continued Next Page)*

- 4 -

may be taken by permission from an interlocutory order . . . certified under 42 Pa.C.S. § 702(b) or for which certification pursuant to [section] 702(b) was denied[.]"). That motion was deemed denied as of September 24, 2019.

On the same day Appellants filed their motion to amend with the trial court,[7] they filed with this Court a petition for review, which this Court granted by order dated February 7, 2020.[8]

Appellants raise the following claims for our review:

1. Did the [] trial court err as a matter of law and abuse its discretion in granting [Timber Ridge's] preliminary objections and referring the matter to binding, private arbitration pursuant to a facility-resident arbitration agreement allegedly signed by [D]ecedent, when the uncontradicted record shows that [D]ecedent was not competent to sign such an agreement[,] thereby invalidating the alleged agreement[?]

2. Did the [] trial court err as a matter of law and abuse its discretion in failing to hold a hearing and/or make a proper

_____

court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.

42 Pa.C.S.A. § 702(b).

[7] Contemporaneously with the motion to certify, Appellants filed a notice of appeal to this Court, docketed at 1425 MDA 2019. Timber Ridge filed a motion to quash the appeal as interlocutory, which was granted on January 6, 2020.

[8] This Court, in its discretion, may entertain an appeal of an interlocutory order if it is satisfied that there is a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter. **See** 42 Pa.C.S. § 702; Pa.R.A.P. 1311(a).

- 5 -

threshold determination of whether or not there was a valid contract and/or agreement to arbitrate, which is a matter which first must be decided by the court in deciding whether to refer the matter to private, binding arbitration[?]

Brief of Appellant, at 6 (unnecessary capitalization omitted).

Appellants assert that the trial court erred by referring the survival action to binding arbitration, without a hearing, when the uncontradicted record shows that Decedent was not competent to sign the arbitration agreement upon her admission to Timber Ridge. Appellants argue that the trial court improperly placed the burden of proof upon them to demonstrate that Decedent lacked capacity to enter into a valid agreement; they contend that, once they presented evidence "tending to show lack of competency for a reasonable time" prior to the execution of the agreement, the burden shifted to Timber Ridge to demonstrate, by clear and convincing evidence, that Decedent was competent to contract. Brief of Appellants, at 20-21. Appellants claim that Timber Ridge "offered no evidence of [Decedent's] competency, [or] her capacity to understand and appreciate the effect of the [agreement]." *Id.* at 23. Appellants further assert that, at a minimum, the case should be remanded to the trial court for discovery and an evidentiary hearing to determine Decedent's capacity.

In response, Timber Ridge argues that the record supports the trial court's determination that, on the day she executed the agreement, Decedent possessed the capacity to do so. Timber Ridge asserts that record evidence shows that, on October 1, 2008, Decedent was calm, coherent, and understood what she was doing. Timber Ridge argues that the evidence relied

upon by Appellants is too remote in time to the date of execution and, as such, is irrelevant or limited in probative value. Additionally, Timber Ridge argues that Appellants never requested discovery or a hearing, despite the court's suggestion that it might be necessary.[9]

Our review of a grant or denial of a petition to compel arbitration is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion. ***Pisano v. Extendicare Homes, Inc.***, 77 A.3d 651, 654 (Pa. Super. 2013). We apply a two-part test. "First, we examine whether a valid agreement to arbitrate exists. Second, we must determine whether the dispute is within the scope

_____

[9] At a hearing held on January 7, 2019, the trial court stated the following with regard to the issue of Decedent's capacity to execute the arbitration agreement:

> THE COURT: My concern—I do all the mental health appeals here and all the guardianships, so I have a pretty good understanding of both those areas. I'm just wondering if I'm going to be able to make that determination based upon what's before me, which seems critical to the issue of whether or not we send the survival action to arbitration.
>
> **I'm wondering, [counsel for Appellants], as you say, whether or not we're going to need discovery and a hearing on that issue. That sounds to me like where we might be headed here.** That's the key thing we have to decide as to whether or not we're going to stay the wrongful death and send [the survival action] to arbitration or whether [the survival action] stays here and we just move forward. **But we won't know that until we determine whether or not this person had capacity—a judicial ruling as to whether there was capacity when this document was signed.**

N.T. Hearing, 1/7/19, at 19 (emphasis added).

of the agreement." *Id.* at 654–55. Since arbitration is a matter of contract,
a party cannot be compelled to arbitrate unless he or his agent have agreed
to do so. *Bair v. Manor Care of Elizabethtown, PA, LLC*, 108 A.3d 94 (Pa.
Super. 2015). "Whether an agreement to arbitrate disputes exists is a
question of law." *Neuhard v. Travelers Ins. Co.*, 831 A.2d 602, 604 (Pa.
Super. 2003). Thus, our standard of review is limited to determining whether
the trial court committed an error of law and our scope of review is plenary.
*McNulty v. H&R Block, Inc.*, 843 A.2d 1267, 1271 (Pa. Super. 2004).

> Arbitration agreements are matters of contract. Under
> Pennsylvania law, it is presumed that an adult is competent to
> enter into an agreement, and a signed document gives rise to the
> presumption that it accurately expresses the state of mind of the
> signing party. *Estate of McGovern v. Com. State Employees'*
> *Ret. Bd.*, [] 517 A.2d 523, 526 ([Pa.] 1986). To rebut this
> presumption, the challenger must present [clear, precise, and
> convincing] evidence of mental incompetency[.] *Id.* This burden
> of proof requires that
>
>> the witnesses must be found to be credible, that the facts
>> to which they testify are distinctly remembered and the
>> details thereof narrated exactly and in due order, and that
>> their testimony is so clear, direct, weighty[,] and convincing
>> as to enable the [finder of fact] to come to a clear
>> conviction, without hesitancy, of the truth of the precise
>> facts in issue.
>
> *Evans v. Marks*, [] 218 A.2d 802, 804 ([Pa.] 1966).
>
>> [W]here mental capacity to execute an instrument is at
>> issue, the real question is the condition of the person at the
>> very time he executed the instrument . . . in question[. A]
>> person's mental capacity is best determined by his spoken
>> words and his conduct, and [ ] the testimony of persons who
>> observed such conduct on the date in question outranks
>> testimony as to observations made prior to and subsequent
>> to that date. Mere mental weakness, if it does not amount
>> to inability to comprehend the contract, and is

unaccompanied by evidence of imposition or undue influence, is insufficient to set aside a contract.

*Id.* (citations and quotation marks omitted).

***Cardinal v. Kindred Healthcare, Inc.***, 155 A.3d 46, 50 (Pa. Super. 2017).

A party may seek to compel arbitration by filing preliminary objections asserting the existence of a valid agreement to arbitrate. ***See*** Pa.R.C.P. 1028(a)(6) ("Preliminary objections may be filed by any party to any pleading and are limited to the following grounds: . . . agreement for alternative dispute resolution[.]"). Where an issue of fact is raised by preliminary objections, "the court shall consider evidence by depositions or otherwise." Pa.R.C.P. 1028(c)(2). "In such a situation, the court may not reach a determination based upon its view of the controverted facts, but must 'resolve the dispute by receiving evidence thereon through interrogatories, depositions or an evidentiary hearing.'" ***Holt Hauling & Warehousing Sys., Inc. v. Aronow Roofing Co.***, 454 A.2d 1131, 1133 (Pa. Super. 1983) (citation omitted). "The failure of the parties to provide the evidence necessary for a proper determination of the issue does not excuse the court from further inquiry." ***Id.***

Here, Appellants raised an issue of fact by alleging in their response to Timber Ridge's preliminary objections that Decedent was legally incompetent to execute a valid contract. Documents submitted by the Appellants in conjunction with their response to the preliminary objections included, *inter alia*, evidence that Decedent had a long history of mental illness—specifically, schizoaffective disorder—which impaired her "capacity to exercise self-control,

judgment, and discretion in the conduct of her personal needs[.]" Report and Recommendation of the Mental Health Review Officer, 5/20/08, at ¶ 1. Over the course of Decedent's life, she was hospitalized repeatedly, beginning at some point in her twenties. *See* Clarks Summit Hospital Discharge Summary, 10/1/08, at 1; *see also* Affidavit of James Holminski, 7/19/19, at [1]. Evidence further showed that just one week prior to the execution of the Agreement, Decedent suffered from impaired insight, cognitive impairment, and impaired judgment. *See* Clarks Summit Monthly Treatment Plan Review, 9/23/08. Decedent had a "limited ability to read and write"[10] and "did not have the capacity to understand the import of legal documents." Affidavit of James Holminski, 7/19/19, at 1-2.[11]

While acknowledging that Appellants' evidence "did legitimately offer some evidence that suggested a historic inability of Decedent to manage her own affairs," Brief of Appellee, at 35, Timber Ridge nonetheless asserts that

---

[10] The evidence submitted by Appellants is conflicting as to Decedent's level of education. In his affidavit, Holminski states that she completed sixth grade. The Clarks Summit discharge summary indicates that she "left school at sixteen," but also states that she "dropped out of school in the eighth grade to go to work in a sewing factory[.]" Clarks Summit Hospital Discharge Summary, 10/1/08, at 1, 2.

[11] Timber Ridge argues that Holminski is a "lay witness with no expertise to offer an opinion as to the capacity or competence of [Decedent] from a medical perspective." Brief of Appellee, at 34. We agree that Holminski's opinion possesses limited probative value with regard to Decedent's medical or psychiatric diagnoses. However, to the extent that Holminski—as Decedent's son—was intimately familiar with his mother's personal history and ability to manage her affairs, his affidavit is relevant to creating an issue of fact as to the validity of the Agreement.

the discharge summary prepared by Clarks Summit State Hospital is the best evidence as to her state of mind at the time of execution because it was created on the very day that Decedent executed the Agreement. Timber Ridge argues that the summary "clearly and convincingly" demonstrates Decedent's capacity and proves she was "competent and aware of the nature of the transaction and knowingly assented to the [A]greement." Brief of Appellee, at 41. Timber Ridge argues as follows:

> For instance, at or near the time of the signing of the [Agreement] by [Decedent], on October 1, 2008, [Decedent] had requested her discharge to a nursing home—Timber Ridge—signing her own discharge request. At the time of [Decedent's] discharge from Clarks Summit State Hospital on October 1, 2008, a discharge summary showed that [Decedent] had been controlled and managed on her medication and therapies. In the discharge summary, it is stated that, during her course in the hospital, a prescribed drug regimen greatly diminished "her mood lability, disorganized thought[,] and delusion." At the time of discharge, it was noted she was "euthymic[12] and could relate coherently without interference from delusional thoughts."
>
> Tellingly, at the time of [Decedent's] admission/transfer to Timber Ridge, a Resident Admission Audit was prepared by Timber Ridge. With regard to her [c]ommunication, it was noted that she had "clear speech," "understands," and "understood."[13]

---

[12] Euthymia is defined as "a normal, tranquil mental state or mood." https://www.merriam-webster.com/medical/euthymia (last visited 6/25/21).

[13] We note that, while the Timber Ridge Resident Admission Audit does state that Decedent's speech was clear and that she "understood," it also states that she was "tearful," "anxious," and "yell[ed]/scream[ed]." Timber Ridge Resident Admissions Audit, 10/1/08. Moreover, we do not necessarily view as evidence of Decedent's competency the fact that she requested her own discharge and signed herself out of Clarks Summit. Indeed, a "Monthly
*(Footnote Continued Next Page)*

*Id.* at 41-42.

Timber Ridge is correct that "the testimony of those who observed the speech and conduct of the person [on the date of execution] outranks testimony as to observations made prior to and subsequent to that date." ***In re Meyers***, 189 A.2d 852, 862 (Pa. 1963). However, given the nature and lifelong duration of Decedent's diagnosis, the evidence of her limited ability to read and write,[14] and the fact that, only a week prior to discharging herself from treatment, Decedent suffered from impaired insight, cognitive impairment, and impaired judgment, we conclude that the trial court erred in failing to receive evidence through interrogatories, depositions or an evidentiary hearing.[15] ***Holt Hauling & Warehousing Sys., Inc.***, *supra*.

---

Treatment Plan Review" completed at Clarks Summit a mere seven days prior to Decedent's discharge contains a "Physician's Continued Treatment Need Certification" stating that "this patient continues to require daily active treatment furnished directly by or requiring the supervision of [inpatient psychiatric facility] personnel." Clark's Summit Monthly Treatment Plan Review, 9/23/08, at 2. Accordingly, Decedent's self-discharge a mere seven days later could equally be seen as evidence of lack of judgment or insight.

[14] "[P]ersons who are blind or illiterate are not automatically excused from complying with the terms of a contract, release or agreement which they sign simply because their disability might have prevented them from reading the same. A person with such a disability must make a reasonable effort to have the document read to him." ***N. Penn Sanitation, Inc. v. W.C.A.B.(Dillard)***, 850 A.2d 795, 801 (Pa. Cmwlth. 2004). However, Decedent's level of literacy is certainly a factor to be considered in determining whether she was capable of understanding the Agreement prior to signing it.

[15] In support of its ruling, the trial court relied almost exclusively on ***Cardinal v. Kindred Healthcare, Inc.***, 155 A.3d 50 (Pa. 2017), a case also involving a decedent's capacity to execute an arbitration agreement. We would note

*(Footnote Continued Next Page)*

Accordingly, we vacate the order referring the survival action to arbitration and remand the case to the trial court. Upon remand, the court shall allow the parties to engage in discovery on the issue of Decedent's competency to execute the Agreement and, if necessary, hold a hearing.

Order vacated. Case remanded with instructions. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/05/2021</u>

---

that, in **Cardinal**, the parties engaged in discovery, which included the taking of the deposition of the individual responsible for conducting admissions at Kindred's facility, who oversaw the decedent's execution of the arbitration agreement at issue in that matter.