J-A11016-15

2015 PA Super 273

| | |
|---|---|
| MICHELE VALENTINO, AS ADMINISTRATRIX OF THE ESTATE OF DEREK VALENTINO, DECEASED, AND MICHELE VALENTINO, IN HER OWN RIGHT, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| PHILADELPHIA TRIATHLON, LLC, | |
| Appellee | No. 3049 EDA 2013 |

Appeal from the Order Entered September 30, 2013
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): April Term, 2012 No. 1417

BEFORE: FORD ELLIOTT, P.J.E., OLSON AND WECHT, JJ.

DISSENTING OPINION BY OLSON, J.: **FILED DECEMBER 30, 2015**

I agree with my learned colleagues in the Majority that: (1) the trial court correctly sustained preliminary objections to Appellant's claims alleging outrageous acts, gross negligence, reckless conduct, and punitive damages; (2) the trial court properly sustained preliminary objections based upon Appellant's failure to plead certain claims with specificity; and, (3) the completion of discovery and the further development of the factual record defeat application of the coordinate jurisdiction and eliminate factual issues surrounding Derek Valentino's execution of the liability waiver. I, too, express no view regarding the expert report of Mark Mico since the trial court did not address this issue. I am unable to agree, however, with the

learned Majority's conclusion that Appellant is not bound by the liability release executed by Mr. Valentino because she was not a signatory. Accordingly, I respectfully dissent.

The Majority reaches this conclusion based upon its reading of our recent decision in **Pisano v. Extendicare Homes, Inc.**, 77 A.3d 651 (Pa. Super. 2013), *appeal denied*, 624 Pa. 683 (Pa. 2014), *cert. denied*, 134 S.Ct. 2890 (2014). In that case, a nursing home resident signed a contract agreeing to submit all claims against the nursing home to arbitration. When the resident died, the administrator of the resident's estate asserted wrongful death claims against the nursing home and the nursing home invoked the arbitration clause. The trial court denied the nursing home's petition to compel arbitration. On appeal, this Court affirmed, concluding that the arbitration clause was not binding against wrongful death claimants who did not sign the agreement.

Under **Pisano**, "wrongful death actions are derivative of decedents' injuries but are not derivative of decedents' rights." **Pisano**, 77 A.3d at 659-660. Thus, while a third party's wrongful death claim is not derivative of the decedent's right of action, a wrongful death claim still requires a tortious injury to succeed.

Despite the plain import of this language, the Majority construes **Pisano** as holding that a wrongful death claimant's rights are wholly separate in all contexts and for all purposes. This expansive interpretation of **Pisano** conflates the concept of a right of action under Pennsylvania's

Wrongful Death Act[1], referring to the non-derivative right of a statutory claimant to seek compensation, with the principle that a claimant's substantive right to obtain a recovery always remains, even in the wake of **Pisano**, "depend[ant] upon the occurrence of a tortious act." **Pisano**, 77 A.3d at 654. The issue in **Pisano** was whether a wrongful death claimant should be bound by an arbitration clause that he did not sign. This is a uniquely procedural issue that differs greatly from the enforcement of a liability waiver such as the one at issue in the present case. An arbitration clause dictates the forum where a litigant may present his claim. The terms of such a clause do not fix substantive legal standards by which a right to a recovery is measured. Because the decedent signatory agrees to submit his claim to arbitration, his claim is subject to the compulsory provisions of the agreement. On the other hand, a non-signatory wrongful death claimant who possesses an independent, non-derivative right of action has not consented to arbitration and therefore cannot be compelled to present his claim to an arbitrator.

A liability waiver, however, operates quite differently. By executing a liability waiver, the decedent signatory acknowledges and assumes identified risks and pledges that the defendant will not be held liable for resulting harms. If the waiver is executed in a knowing, intelligent, and voluntary

_____

[1] 42 Pa. C.S.A. § 8301.

manner and is deemed valid, the waiver shifts the risk of loss away from the defendant and onto the decedent. In effect, an enforceable waiver under which the decedent assumes certain risks transforms the nature of the defendant's conduct *vis-à-vis* the decedent from tortious to non-tortious. Since **Pisano** retains the requirement that the decedent's death result from a tortious act, even non-signatory wrongful death claimants remain subject to the legal consequences of a valid liability waiver.

Pennsylvania case law has long shared the view that a wrongful death claimant's substantive right to recover is derivative of and dependent upon a tortious act that resulted in the decedent's death. Our reasoning in **Sunderland v. R.A. Barlow Homebuilders**, 791 A.2d 384 (Pa. Super. 2002), *aff'd*, 838 A.2d 662 (Pa. 2003) makes this point clear:

> A wrongful death action is derivative of the injury which would have supported the decedent's own cause of action and is dependent upon the decedent's cause of action being viable at the time of death. [**Moyer v. Rubright**, 651 A.2d 1139, 1143 (Pa. Super. 1994)]. "As a general rule, no action for wrongful death can be maintained where the decedent, had he lived, could not himself have recovered for the injuries sustained." **Ingenito v. AC & S, Inc.**, 633 A.2d 1172, 1176 (Pa. Super. 1993). Thus, although death is the necessary final event in a wrongful death claim, **the cause of action is derivative of the underlying tortious acts that caused the fatal injury**. *Id.*

*Sunderland*, 791 A.2d at 390-391 (emphasis added; parallel citations omitted).[2]

Applying these settled principles in the present case, I would hold that a decedent's actions or agreements that support substantive defenses asserting that the defendant's actions were not tortious can be asserted in defense of claims brought by third party wrongful death claimants. Here, Mr. Valentino, by registering on-line for the Triathlon, executed a detailed waiver, release of liability, assumption of risk and indemnity agreement. This waiver was the basis for Appellee's substantive defense that it's actions were not tortious. Accordingly, I would hold that the waiver constitutes a complete defense to Appellant's wrongful death claims.

These cases also establish that the Majority overinflates the importance of the presence of a wrongful death claimant's signature when evaluating the enforceability of a liability waiver. I agree that, under *Pisano*, a wrongful death claimant possesses an independent, non-derivative right of action that cannot be subject to compulsory arbitration in the absence of consent. Thus, the claimant's signature is necessary to demonstrate that she agreed to submit her claim to binding arbitration. The same is not true for a liability waiver, however. As explained above, a valid

---

[2] While the Majority relies on decisions issued by federal courts, as well as rulings emanating from our sister states, the Majority does not address the binding and settled Pennsylvania authority set forth in *Sunderland* and the cases cited therein.

waiver signed only by the decedent transfers the risk of harm from the defendant to the decedent, in effect rendering the defendant's conduct non-tortious. Since the wrongful death claimant's substantive right of recovery presupposes tortious conduct on the part of the defendant, the claimant's signature on the waiver is not necessary.

Although I did not uncover recent Pennsylvania case law that discusses the application of a valid waiver in a subsequent wrongful death action, several decisions from California are instructive on this point. These cases illustrate that, while a valid waiver does not bar a wrongful death claim, it can support a defense asserting that the alleged tortfeasor owed no duty to the decedent:

> Although a wrongful death claim is an independent action, wrongful death plaintiffs may be bound by agreements entered into by decedent that limit the scope of the wrongful death action. Thus, for example, although an individual involved in a dangerous activity cannot by signing a release extinguish his heirs' wrongful death claim, the heirs will be bound by the decedent's agreement to waive a defendant's negligence and assume all risk.

*Ruiz v. Podolsky*, 237 P.3d 584, 593 (Cal. 4th 2010). Hence, where a decedent executes a valid waiver:

> the express contractual assumption of the risk, combined with the express waiver of defendants' negligence, constitute[s] a complete defense to the surviving heirs' wrongful death action. This is different than holding th[at the wrongful death] action is barred.

*Scroggs v. Coast Community College Dist.*, 193 Cal.App.3d 1399, 1402 (Cal. App. 4th Dist. 1987); *Eriksson v. Nunnick*, 233 Cal.App.4[th] 708 (Cal.

- 6 -

App. 4th Dist. 2015); *Madison v. Superior Court* 203 Cal.App.3d 589 (Cal. App. 2nd Dist. 1988).

The Majority eschews the approach followed in the California cases and opts instead to follow the New Jersey decision in *Gershon v. Regency Diving Center, Inc.*, 845 A.2d 720 (N.J. Super. 2004). *Gershon* rejected the rationale in *Madison* and the other California cases, noting that the California approach was "internally inconsistent" since it allowed claimants to file a lawsuit that ultimately would not succeed. This reasoning constitutes a one-dimensional view of the issue. Take, for example, a case in which the decedent executes a valid waiver. Thereafter, the defendant raises a successful assumption of the risk defense against the decedent's estate in a survival action. Under the holding in *Gershon*, upon which the Majority relies, the defendant cannot raise the defense in a companion wrongful death action. It appears, then, that *Gershon* trades one inconsistency for another.

Leaving this consideration aside, I question whether the California cases raise an actual incongruity that compels rejection of the approach followed in that line of authority. Since the same conduct by the defendant is subjected to scrutiny, how can it be inconsistent to suggest that a wrongful death claimant should not prevail where a valid waiver precludes recovery in a companion survival action? I believe that the California

approach fully aligns with Pennsylvania law and that we should follow it in this case.

Other cases cited by the Majority are unavailing. For example, *Buttermore v. Aliquippa Hospital*, 561 A.2d 733 (Pa. 1989) is inapposite. There, the parties executed a release as part of a settlement agreement. In contrast, the liability waiver here alters the nature of the defendant's conduct by precluding liability. Thus, *Buttermore*, like *Pisano*, dealt more with procedural obstacles to a non-signatory's right to bring a claim than with the substantive legal standards used to measure whether the claimant is entitled to compensation. *Brown v. Moore*, 247 F.2d 711 (3rd Cir. 1957), *cert. denied*, 355 U.S. 882 (1957) also is unpersuasive. Although the *Brown* court suggested that Brown's children could recover, the court offered no explanation for the basis of this conclusion. Thus, while the language supports the Majority's position, the analysis is threadbare and unhelpful. I would not rely on the decision to support a substantial change in Pennsylvania law.

The Majority bars Appellee from asserting a liability waiver as a defense to Appellant's claims on grounds that, as a non-signatory, she is not subject to the release executed by her late husband. I believe that this ruling works a sweeping change to our Wrongful Death Act jurisprudence. In effect, the Majority holds that assumption of the risk and other derivative defenses are no longer viable in wrongful death litigation. Although the

Majority does not address the issue, it is distinctly possible that Appellee will be precluded from asserting an assumption of the risk defense at trial. In addition, it is equally possible that Appellee will not be permitted to introduce the liability waiver before the jury. Like assumption of the risk, many, if not most, defenses asserted against wrongful death claims are derivative of the decedent's conduct or the decedent's relationship with the defendant. I respectfully suggest that the Majority's ruling goes a long way toward eviscerating such strategies. Going forward, I anticipate that many wrongful death claimants will cite the Majority's decision in their efforts to foreclose all such derivative defenses. This case, then, moves wrongful death claims far along the spectrum toward a strict liability paradigm.[3] Unlike the Majority, I would read the wrongful death statute according to its plain meaning and allow compensation for identified claimants where a relative's death results from wrongful (or tortious) conduct by the defendant. By holding otherwise, the Majority removes viable defenses and reads the word "wrongful" out of the statute. I believe that such sweeping changes are distinctively legislative tasks and that it is up to our General Assembly to apply its full panoply of deliberative tools to balance competing societal

---

[3] Indeed, many of the authorities quoted at length by the Majority cite compensation as the preeminent, if not exclusive, goal of wrongful death statutes.

interests in these matters. Courts should not usurp the legislature's function by removing defenses that were previously available.

In sum, Pennsylvania law distinguishes a wrongful death claimant's non-derivative right of action from the substantive basis upon which a claimant can hold a defendant liable, which is derivative. This approach allows the defendant to assert substantive defenses such as a liability waiver against a wrongful death claimant. Applying these settled principles to the case at hand, I would affirm the order granting summary judgment in favor of Appellee. Accordingly, I must respectfully dissent.