J-A29005-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| EQM GATHERING OPCO, LLC, SUBSIDIARY OF EQM MIDSTREAM PARTNERS, LP, EQM POSEIDON MIDSTREAM, LLC (F/K/A) POSEIDON MIDSTREAM, A SUBSIDIARY OF EQM MIDSTREAM PARTNERS, LP, EQM OLYMPUS MIDSTREAM, LLC, OF A SUBSIDIARY OF EQM MIDSTREAM PARTNERS, LP, EQUITRANS WATER SERVICE (PA), LLC, A SUBSIDIARY OF EQM MIDSTREAM PARTNERS, LP, EQUITRANS WATER SERVICE (OH), LLC, A SUBSIDIARY OF EQM MIDSTREAM PARTNERS, LP | : : : : : : : : : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| FLYING W PLASTICS, INC., LEE SUPPLY COMPANY, INC., CORE & MAIN L.P., AND MICHELS CORPORATION | : : : : : : | |
| | : | |
| APPEAL OF: MICHELS CORPORATION | : : : : : | |

No. 603 WDA 2023

Appeal from the Order Entered April 12, 2023
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD 22-009441

BEFORE:  BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY BOWES, J.:                    **FILED: March 21, 2024**

Michels Corporation ("Michels") appeals from the order overruling its preliminary objections seeking dismissal of the underlying complaint based upon an agreement to arbitrate.[1] We vacate and remand with instructions.

Plaintiffs filed the instant eighteen-count complaint against Michels, Flying W. Plastics, Inc., Lee Supply Company, Inc., and Core & Main L.P. (collectively, "Defendants") in 2022. This appeal concerns only whether Michels had a valid agreement to arbitrate with Plaintiffs EQM Gathering Opco, LLC ("EQM Gathering") and EQM Poseidon Midstream, LLC ("EQM Poseidon") (collectively, "EQM"). To make this determination, it is imperative that we understand the context of this dispute, and thus we first set forth the foundational facts as recited by the trial court:

> [A]ll of the Plaintiff entities are engaged in the natural gas business providing natural gas and water gathering services. In order to fulfill contractual obligations related to water services that were negotiated in 2017, the Plaintiff entities would build and operate various parts of this system. Each entity contracted with multiple vendors in order [to] secure goods and services for the project.

---

[1] We observe that "[a]n order overruling preliminary objections that seek to compel arbitration is an interlocutory order appealable as of right under 42 Pa.C.S. § 7320(a)(1) and Pa.R.A.P. 311(a)(8)." **McCrossin v. Comcast Spectacor, LLC**, ___ A.3d ___, 2024 WL 439416, at *3 (Pa.Super. Feb. 6, 2024) (cleaned up). To be so appealable, a party must prove that the dispute is bound by an arbitration agreement[.]" **Armstrong World Indus., Inc. v. Travelers Indem. Co.**, 115 A.3d 342, 346 (Pa.Super. 2015). For the reasons discussed *infra*, we conclude that the parties are bound by an arbitration agreement as to the underlying claims, and therefore this appeal is properly before us. **See McCrossin**, 2024 WL 439416, at *3 ("Where the parties' agreement requires arbitration, . . . the denial of enforcement is appealable as of right even though the parties' agreement includes some pre-arbitration settlement procedures.").

With respect to the events giving rise to the action, the second amended complaint makes the following allegations:

34. On or about September 4, 2019, after many miles of pipe had been purchased, fused and installed, pipes began to burst and leak, resulting in third-party property damage and replacement of the subject piping.

35. Plaintiffs placed the Defendants herein on notice of the failure of the pipe and commenced an investigation, including testing of the pipes and fuses.

36. Following testing, numerous of Defendants' materials and fuses were found to be defective, necessitating replacement of the entire waterline system in order to accommodate Plaintiff's clients' expectations and scheduled operations.

37. Upon information and belief, all pipe manufactured by Flying W Plastics for the years 2018 and 2019 were found to be defective such that the entire waterline system necessitated replacement.

38. Upon information and belief, fuses performed by Michels have failed to maintain the integrity of the fused pipe, contributing to the catastrophic failure.

Three counts are specifically made against . . . Michels, count XV – breach of express warranties; count XVI – breach of contract; and count XVII – negligence. Following the filing of the second amended complaint, Defendant Michels filed preliminary objections raising questions of fact raising the arbitration issue that gave rise to the instant appeal.

Trial Court Opinion, 7/10/23, at 2-3 (cleaned up). The trial court heard argument on the preliminary objections on March 1, 2023. Thereafter, the court allowed both parties to submit supplemental briefs addressing the

application of our Supreme Court's holding in ***Taylor v. Extendicare Health Facilities, Inc.***, 147 A.3d 490 (Pa. 2016).[2]

The genesis of the arbitration disagreement is a single provision contained within a Master Construction Services Agreement ("MCSA") executed between Michels and EQM Gathering, which provides in whole as follows:

> **18.1 Dispute Resolution. Any dispute, controversy or claim arising out of or relating to the rights and obligations under the Contract Documents shall be settled upon the mutual agreement of the Parties by binding arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association or similar rules.** Such arbitration shall be held in Allegheny County, Pennsylvania. The Parties agree to submit to the jurisdiction of the arbitration panel at such venue. The award rendered by the arbitrator(s) shall be final, and judgment, upon the arbitration award may be entered in any court having jurisdiction thereof. **If either Party chooses to resolve any dispute by litigation, then the Parties irrevocably agree to submit to the exclusive jurisdiction of the Court of Common Pleas of Allegheny County, Pennsylvania or the United States District Court for the Western District of Pennsylvania.** Contractor shall proceed diligently with any undisputed Work under the Contract Documents notwithstanding the existence of any dispute, controversy or claim, and during the pendency of any

---

[2] In ***Taylor v. Extendicare Health Facilities, Inc.***, 147 A.3d 490, 493 (Pa. 2016), the High Court held that the Federal Arbitration Act ("FAA") "preempt[ed] the application of [Pennsylvania Rule of Civil Procedure] 213(e)[, concerning compulsory joinder of wrongful death and survival actions], and require[d] arbitration of the survival claim against Extendicare." In so holding, the Court noted that the relevant jurisprudence from the Supreme Court of the United States "instruct[ed] that the prospect of inefficient, piecemeal litigation proceeding in separate forums is no impediment to the arbitration of arbitrable claims." ***Id***. at 507. Thus, "the FAA binds state courts to compel arbitration of claims subject to an arbitration agreement." ***Id***. at 509 (citation omitted).

dispute resolution process as set forth in this Section. Notwithstanding the foregoing, in the event that a Party is sued or subjected to any other action or proceedings relating to Contractor or Company's performance hereunder in any other state or forum, such Party shall have the right to join the other Party and prosecute its claims, or any one or more of them, against that Party in such other suit, action or proceeding.

MCSA, 11/20/18, at Art. 18, § 18.1 (emphases added).[3]

In light of this provision, EQM wrote to Michels on March 8, 2021, prior to the commencement of the instant litigation, inquiring about the appropriate dispute resolution process following the rupture in the pipelines. The letter provided in relevant part:

As you know, EQM . . . has recently taken several steps in an effort to amicably resolve the failure of the SGL0179 pipeline constructed by Michels. . . . Despite such attempts at cooperation, Michels insists that the failure is not its fault, but fails to provide any of its own testing results or data to support its position.

It will likely cost EQM in excess of [$]15 million to remediate the defects in the pipeline constructed by Michels, caused by faulty workmanship (in the form of improper fusions) by Michels'[s] employees. Unfortunately, it appears that Michels'[s] only "offer" is that we return $800,000 of the approximate $1.8 million in retention that we have currently held. EQM hereby rejects this offer.

. . . .

In addition, and in accordance with [§] 18.1 of the [MCSA], EQM agrees to arbitrate the dispute between us in Allegheny County, Pennsylvania, in accordance with the Construction Industry Arbitration Rules ("CIAR") of the American Arbitration Association. EQM requests that Michels concur and communicate its agreement to arbitrate promptly to EQM. EQM will file its Demand for Arbitration under the CIAR promptly upon receipt of Michels'[s] agreement to arbitrate. Absent such agreement, EQM will

_____

[3] The MCSA may be found in the Amended Complaint, 11/18/22, Exhibit D.

commence litigation in western Pennsylvania. In either case, EQM will seek to collect all damages available to it regarding Michels'[s] default under the MCSA, as well as any remedial costs associated with the investigation of this matter.

EQM remains willing to entertain serious discussion regarding resolution as we pursue the avenues outlined above. We look forward to your prompt response.

March 8, 2021 Letter, at unnumbered 1-2.[4]

In response, Michels recommended that the parties engage in the more informal process of mediation before deciding whether to pursue formal dispute resolution through arbitration or litigation. Specifically, Michels stated:

With all of that said, we still want to avoid protracted litigation. Perhaps an intermediate step prior to arbitration or a lawsuit would help resolve this matter. Before electing between arbitration and litigation in court Michels would agree to conduct an early mediation. Perhaps the inclusion of a neutral third party could help move this matter forward. Please advise if mediation would be an acceptable intermediate solution. If so, we can ask our respective counsel to begin that process.

March 11, 2021 Letter, at unnumbered 2.[5]

EQM acquiesced to the mediation proposal, but nonetheless insisted that the parties choose whether to proceed to arbitration or litigation in the event mediation failed: "While we are willing to see whether an amicable resolution

---

[4] This letter can be found in Evidence in Support of Preliminary Objections, 2/9/23, at Exhibit C.

[5] This letter can be located in Plaintiffs' Evidence in Support of Opposition to Defendant Michel's Preliminary Objections Raising Questions of Fact, 2/9/23, at Exhibit C.

may be achieved through mediation, it is also necessary to determine whether any unresolved disputes will be submitted to arbitration or litigation. As such, we require Michels'[s] election regarding dispute resolution without further delay." March 19, 2021 Letter.[6]

Thereafter, Michels complied with the request and explicitly agreed to arbitration:

> . . . Michels . . . is glad that EQM . . . is willing to participate in an early mediation concerning the dispute at issue. Our counsel will work with [EQM's outside counsel] to select a mutually agreeable mediator.
>
> If the parties are unable to resolve this matter and more formal dispute resolution proceedings are necessary, then Michels Corporation agrees to submit the parties' claims to arbitration pursuant to the terms of the construction agreement.

March 30, 2021 Letter.[7]

Based upon the decision to try mediation before proceeding with the agreed-upon arbitration process, EQM and Michels entered into an agreement ("Tolling Agreement") to toll "the running of any applicable statutes of limitation or similar limitation periods, and any other defenses, whether equitable, statutory, or otherwise" from August 25, 2021 through the expiration date, defined as "[thirty] days following the date on which a written

---

[6] The March 19, 2021 letter can also be located in Plaintiffs' Evidence in Support of Opposition to Defendant Michel's Preliminary Objections Raising Questions of Fact, 2/9/23, at Exhibit D.

[7] This letter can be found in Evidence in Support of Preliminary Objections, 2/9/23, at Exhibit D.

Notice of Termination" is provided to either Michels or EQM. ***See*** Tolling Agreement, 8/25/21.[8]

In the preamble to the Tolling Agreement, the parties confirmed that they had initiated mediation and would proceed to arbitration if mediation was unsuccessful:

> WHEREAS, a dispute has arisen between the Parties regarding Michels'[s] alleged responsibility for damages arising from and/or related to the failures of the pipeline and regarding EQM's outstanding payments owed to Michels; and
>
> WHEREAS the Parties have initiated the mediation process, yet no formal proceedings have occurred; and
>
> WHEREAS, if mediation fails, the Parties have elected to adjudicate this matter through the American Arbitration Association (hereinafter "AAA arbitration"); and
>
> WHEREAS, the Parties wish to toll the running of any applicable statute of limitation and/or any other legal defense based upon the passage of time, during the period covered by this Agreement.

*Id*. The Tolling Agreement included an integration clause, clarifying that it "contain[ed] the entire understanding between the Parties regarding the matters addressed herein" and that the Tolling Agreement "shall supersede and prevail over prior communications between the Parties or their representatives regarding the matters contained herein." ***Id***.

---

[8] The Tolling Agreement is located within Plaintiffs' Evidence in Support of Opposition to Defendant Michel's Preliminary Objections Raising Questions of Fact, 2/9/23, at Exhibit B.

In April 2022, Michels submitted a change order requesting over $1 million in connection with its inspection of the pipeline to determine the cause of the ruptures. The parties disputed, and continue to dispute, whether they had participated in a full mediation session at that point. Regardless, EQM rejected the change order and, approximately two months later, initiated the underlying litigation.

We now turn to how the parties and the trial court interpreted the foregoing documents and conduct. According to Michels, § 18.1 of the MCSA "**requires** the parties to arbitrate if they so choose." Michels's brief at 17 (emphasis in original). Michels asserts that such a choice was made by the parties as of March 30, 2021, when Michels explicitly agreed to EQM's offer to arbitrate the dispute if mediation failed. *Id*. at 19.

On the other hand, EQM avers that "under the terms of the MCSA, the parties could choose to arbitrate a dispute **unless either party chose to resolve the dispute by litigation**." EQM's brief at 14 (emphasis in original). In that vein, EQM maintains that while the choice to arbitrate was not "mandatory or irrevocable" by the terms of § 18.1, the same provision provided that a choice by either party to litigate was irrevocable. *Id*. at 16. Thus, per the express terms of the MCSA, EQM believes it was entitled to withdraw its agreement to arbitrate at any time and instead pursue litigation.

The court interpreted § 18.1 as providing the contracting parties with the option to mutually agree to either arbitrate or litigate any dispute. Despite

this choice, the court adhered to EQM's focus on § 18.1 only mentioning irrevocability in terms of the choice to litigate. *See* Trial Court Opinion, 7/10/23, at 7. Based on this reading, the court held that nothing presented by the parties "indicate[d] that the agreement to arbitrate made pursuant to the MCSA [§] 18.1 did not remain elective and revocable in favor of litigation in this forum." *Id*. at 14. Therefore, the "court conclude[d] that the parties did not have an express agreement to arbitrate the dispute[,]" and overruled Michels's preliminary objections. *Id*. at 15 (cleaned up).

This timely appeal followed. Both Michels and the trial court complied with Pa.R.A.P. 1925. Michels raises a single issue for our consideration: "Did the trial court commit an error of law [by] denying Michels's Preliminary Objections seeking to compel arbitration pursuant to a binding written agreement?" Michels's brief at 7.

> We begin with the pertinent legal principles:
>
> Our standard of review of a claim that the trial court improperly overruled preliminary objections in the nature of a petition to compel arbitration is clear. Our review is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition.
>
> In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration. First, we examine whether a valid agreement to arbitrate exists. Second, we must determine whether the dispute is within the scope of the agreement.
>
> Whether a claim is within the scope of an arbitration provision is a matter of contract, and as with all questions of law, our review of the trial court's conclusion is plenary.

***Fineman, Krekstein & Harris, P.C. v. Perr***, 278 A.3d 385, 389 (Pa.Super. 2022) (cleaned up). In evaluating an agreement to arbitrate, we also consider the following:

> (1) arbitration agreements are to be strictly construed and not extended by implication; and (2) when parties have agreed to arbitrate in a clear and unmistakable manner, every reasonable effort should be made to favor the agreement unless it may be said with positive assurance that the arbitration clause involved is not susceptible to an interpretation that covers the asserted dispute.

***Id***. (cleaned up).

Here, the parties do not contest the second question, whether the dispute falls within the scope of an agreement to arbitrate. Rather, they focus solely on the first part of the test, *i.e.*, whether there was a valid agreement to arbitrate. EQM contends that the arbitration provision of § 18.1 does not contain the word "irrevocably . . . or any similar language[.]" EQM's brief at 16. In interpreting § 18.1, the trial court focused on the inclusion of the word "irrevocably" in the context of the choice to litigate and concluded that this choice of words permitted a party, at any time, to rescind a prior mutual agreement to arbitrate in favor of resolving the dispute through litigation.

A plain reading of the provision belies this assertion. Section 18.1 provides that "[a]ny dispute, controversy or claim arising out of or relating to the rights and obligations under the Contract Documents **shall be settled upon the mutual agreement of the Parties by binding arbitration** in accordance with the Construction Industry Arbitration Rules of the American

Arbitration Association or similar rules." MCSA, 11/20/18, at Art. 18, § 18.1 (emphasis added). Nothing in this provision indicates that the election is revocable after agreed upon by both parties, or that any such controversies **may** be subject to arbitration once the parties so chose. As for the choice to litigate, that provision states that "[i]f either Party chooses to resolve any dispute by litigation, then the Parties irrevocably agree to submit to the exclusive jurisdiction of the Court of Common Pleas of Allegheny County, Pennsylvania or the United States District Court for the Western District of Pennsylvania." MCSA, 11/20/18, at Art. 18, § 18.1. Although the word "irrevocable" was used here, it indicates merely the choice of forum if litigation is pursued. It does not mean that the decision to litigate from one party supersedes or renders voluntary the arbitration provision once the parties agreed to arbitrate. In order words, the parties were to decide whether to mutually agree to arbitration, or if they could not reach such an agreement, one party could elect to proceed to litigation. Once the parties agreed to arbitration however, by the terms of § 18.1, that was how they **shall** proceed.

Here, it is clear from our review of the certified record that EQM and Michels agreed as of March 30, 2021, to pursue arbitration should mediation prove unsuccessful. *See Pisano v. Extendicare Homes, Inc.*, 77 A.3d 651, 661 (Pa.Super. 2013) ("[W]hen addressing the specific issue of whether there is a valid agreement to arbitrate, courts generally should apply ordinary state-law principles that govern the formation of contracts, but in doing so, must give due regard to the federal policy favoring arbitration." (cleaned up)). That

contractual agreement was confirmed by the Tolling Agreement and could not be withdrawn by EQM's subsequent change of heart and desire to proceed to litigation. Thus, there was a valid agreement to arbitrate in place at the time EQM initiated this lawsuit.[9]

We are not persuaded by EQM's argument that the intermediary step of mediation somehow weakened the mutual choice to engage in arbitration as the formal dispute resolution process. The terms of the Tolling Agreement did not dictate how long the parties had to participate in mediation before proceeding with arbitration, only that they could do so after mediation proved unsuccessful, either because the parties decided not to pursue mediation any longer or because the mediator could not reach a compromise. What is clear is that the parties expressly indicated their desire to proceed to arbitration if mediation did not resolve their dispute. Stated simply, whenever any party deemed mediation unsuccessful, the agreement to arbitrate would then take effect. Neither the MCSA nor EQM's frustrations with Michels during the mediation process granted EQM the right to unilaterally change course, rescind the agreed-upon arbitration, and force the parties to instead resolve the dispute through litigation.

Finally, we reject the trial court's reasoning insofar as it overruled the preliminary objections based upon the premise that the agreement to arbitrate

---

[9] While the parties focus on the MCSA as the controlling document, we observe that the same result would hold even if we analyzed this matter solely upon the integrated Tolling Agreement because it confirmed the parties' mutual assent to arbitrate the underlying dispute in the event mediation failed.

was between only EQM and Michels, whereas there were several other parties ultimately named in the litigation. *See* Trial Court Opinion, 7/10/23, at 15 (concluding that "as the dispute changed and expanded . . . and encompassed other potentially liable parties, the mutuality in agreement expressly required to submit a dispute to arbitration did not exist"). As aptly argued by Michels, and "as our Supreme Court made abundantly clear in **Taylor**, the prospect of piecemeal, possibly duplicative litigation is no longer an impediment to arbitrability where a valid agreement exists." **Von Sick v. ANC Builders, Inc.**, 298 A.3d 424, 429 (Pa.Super. 2023).

Unpersuaded by the trial court's reasoning and EQM's arguments, and having determined that both portions of our two-part test have been satisfied, we hold that the trial court abused its discretion in overruling Michels's preliminary objections to compel arbitration. **See Fineman**, 278 A.3d at 389. EQM correctly stated that "[i]t is undisputed that the MCSA provided for arbitration only upon the express agreement of the parties with respect to a particular dispute." EQM's brief at 20. Our review of the record confirms that this is precisely what occurred. Accordingly, we vacate the order overruling Michels's preliminary objections to compel arbitration, and remand for the entry of an order referring the dispute between EQM and Michels to arbitration in accordance with § 18.1 of the MCSA.

Order vacated. Case remanded for entry of order consistent with the dictates of this decision. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

3/21/2024